IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 11-cv-570

| | |
|---|---|
| RASHARD MENDENHALL, ) | |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MEMORANDUM** |
| ) | **IN SUPPORT OF MOTION TO** |
| v. ) | **COMPEL PRODUCTION OF** |
| ) | **DOCUMENTS AND** |
| HANESBRANDS, INC., ) | **RESPONSES TO** |
| a Maryland corporation, ) | **INTERROGATORIES** |
| ) | |
| Defendant. ) | |

Plaintiff Rashard Mendenhall's document requests to Defendant Hanesbrands, Inc. have been outstanding since June 1, 2012, yet HBI has produced only 24 pages of documents, all of which were attached to the Complaint. HBI initially claimed its failure to produce documents arose from the need for a protective order. Despite the entry of that order, however, on September 10, 2012, HBI informed Mendenhall's counsel that HBI was still in the process of reviewing the documents. With a court-ordered mediation scheduled for October 16, 2012 and a fact discovery closure date of November 30, 2012, a Court order compelling HBI to complete its production is necessary to move this case toward resolution.

In addition to HBI's failure to produce documents, HBI has asserted a litany of boilerplate objections to Mendenhall's interrogatories and document requests, refused to identify exactly what documents it is willing to produce, and issued incomplete, vague answers to Mendenhall's interrogatories. For example, in response to Mendenhall's request that HBI identify the persons involved in the termination of his agreement with

1

HBI, HBI objected to the term "involved in" as vague and responded that "it believes the following persons may have been principally involved in the termination . . . ." Ex. 1, at ¶1. Similarly, in response to Mendenhall's request that HBI identify the facts relied upon in terminating Mendenhall, HBI objected to the term "relied upon" as vague and stated that the facts relied upon "included but was not limited to . . . public reaction to Plaintiff's Tweets and 'letter of explanation' including, *inter alia*, comments made in blog posts, postings on social media sites, and news reports . . . ." Ex. 1, at ¶2. No effort was made to specifically identify the "public reaction," "blog posts," "postings on social media sites," or "news reports."

In short, HBI's discovery responses have prevented the "just, speedy, and inexpensive determination of" this action. FED. R. CIV. P. 1. HBI should be compelled to produce complete responses to Mendenhall's discovery requests, as set forth below, and to pay the reasonable attorneys' fees and costs incurred in bringing this motion and conferring with HBI regarding its discovery requests.

## FACTUAL BACKGROUND

Mendenhall is a running back for the Pittsburgh Steelers. In May 2008, Mendenhall and HBI entered into a Talent Agreement, under which HBI was allowed to use Mendenhall's services to promote its Champion brand products. *See* Ex. A to Complaint, at Docket No. 1-1. On August 31, 2010, the Parties agreed to an extension of the Talent Agreement ("Amended Talent Agreement"). *See* Exhibit B to Complaint, at Docket No. 1-2. Section 17(c) of the Amended Talent Agreement provided:

If Mendenhall commits or is arrested for any crime or becomes involved in

2

4822-9692-3921.1

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 2 of 17

> any situation or occurrence (collectively, the "Act") tending to bring Mendenhall into public disrepute, contempt, scandal or ridicule, or tending to shock, insult or offend the majority of the consuming public or any protected class or group thereof, then we shall have the right to immediately terminate this Agreement. HBI's decision on all matters arising under this Section 17(a) shall be conclusive.

*Id.*, p. 4.

On May 2, 2011, the day after President Obama announced that Osama bin Laden had been killed by the United States military, Mendenhall issued a series of posts on Twitter concerning Osama bin Laden's death. On May 4, 2011, Mendenhall issued a public statement clarifying and providing further explanation regarding his statements. *See* Complaint (docket no. 1), at ¶¶35-36.

On May 5, 2011, HBI sent a letter to Mendenhall's representative stating that HBI was terminating the Talent Agreement pursuant to Section 17(a). *See* Ex. C to Complaint, at Docket No. 1-3. The following day, May 6, 2011, HBI issued a statement concerning Mendenhall to ESPN.com, which claimed that Mendenhall's comments "were inconsistent with the values of the Champion brand and with which we strongly disagreed. In light of these comments, Champion was obliged to conduct a business assessment to determine whether Mr. Mendenhall could continue to effectively communicate on behalf of and represent Champion with consumers." *See* Exhibit D to Complaint, at Docket No. 1-4. HBI subsequently refused to pay Mendenhall the remaining amounts owed under the Talent Agreement. *See* Exhibit F to Complaint, at Docket No. 1-6.

3
4822-9692-3921.1

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 3 of 17

## PROCEDURAL HISTORY

On July 18, 2011, Mendenhall filed this action, asserting that HBI had breached the Talent Agreement by purporting to terminate Mendenhall and refusing to pay the amounts owed under the Talent Agreement. *See* Complaint, at Docket No. 1. On August 3, 2011, HBI answered the Complaint and filed a motion for judgment on the pleadings, asserting that there was no material issue of fact as to whether Mendenhall had breached Section 17(a) of the Talent Agreement. *See* Docket No. 11.

On April 12, 2012, the Court denied HBI's motion, holding that under New York law, the Talent Agreement contained an implied duty of good faith and fair dealing, which required HBI to exercise its discretion under the Talent Agreement reasonably, with proper motives, and not arbitrarily. *See* Order and Memorandum Opinion, at Docket No. 18, p. 12. Referencing HBI's statement to ESPN.com that it disagreed with Mendenhall's views, the Court stated that "mere disagreement with Mr. Mendenhall's comments would not have triggered Hanesbrands' termination rights under Section 17(a)." *Id.* at 14. The Court further found that "a factual determination as to the nature of the public's response is necessary in order to assess whether the public's response to Plaintiff's May 2, 2011 tweets could reasonably be characterized in a manner that would trigger Hanesbrands' right to terminate the Agreement under Section 17(a)'s standard . . . ." *Id.* at 17.

On June 1, 2012, Mendenhall issued his first set of document requests and interrogatories to HBI. On June 27, 2012, HBI's counsel requested a 30-day extension of time to respond to Mendenhall's discovery requests. After attempting to agree upon a

shorter extension, Mendenhall's counsel reluctantly agreed to a 30-day extension.

On August 7, 2012, HBI's counsel served HBI's responses to Mendenhall's interrogatories and document requests, but produced only 24 pages of documents, all of which had been attached to Mendenhall's Complaint. Ex. 1 and Ex. 2. HBI's purported reason for not producing documents was that HBI needed a protective order in place before producing documents. Despite its request for a protective order, HBI did not provide a proposed protective order to Mendenhall's counsel for almost three weeks, until August 23, 2012.

Based on HBI's statement that it would be producing documents "after the entry of an appropriate protective order" (*See e.g.*, Ex. 2, at ¶1), Mendenhall's counsel understood that the lack of a protective order was the only thing standing in the way of HBI's production. The protective order was entered on September 10, 2012. Docket No. 25. When Mendenhall's counsel sought confirmation that HBI's production was forthcoming, however, HBI responded that HBI was still in the process of reviewing documents. At the time of the filing of this Motion, HBI has produced only 24 pages of documents to Mendenhall's counsel, all of which were attached to the Complaint.

In addition to its failure to produce documents, HBI has refused to identify exactly what documents it will agree to produce and has not provided complete responses to Mendenhall's interrogatories.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 37(a)(3), if a party fails to answer an interrogatory or produce documents, the opposing party may seek an order compelling

5

4822-9692-3921.1

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 5 of 17

production. *Kinetic Concepts, Inc. v. Convatec Inc.*, 268 F.R.D. 226, 242 n.23 (M.D.N.C. 2010). In any discovery dispute, the party resisting discovery, not the party moving to compel production, bears the burden of persuasion. *Id.* at 243. Here, HBI has made no reasonable attempt to respond in good faith to Mendenhall's requests, and HBI should be compelled to provide complete responses to Mendenhall's discovery requests.

I. **RESPONSES TO DOCUMENT REQUESTS**

    A. **HBI Should be Compelled to Produce All Non-Privileged Documents Responsive to Mendenhall's Production Requests.**

For those document requests in which HBI has agreed to produce documents, HBI has stated that it will produce documents "subject to and without waiver" of its objections, and has refused to confirm that it will endeavor to produce <u>all</u> non-privileged, responsive documents, as opposed to merely <u>some</u> non-privileged, responsive documents. During the parties' meet and confer, counsel for HBI initially agreed that its promise to produce "non-privileged documents responsive" to Mendenhall's requests would encompass <u>all</u> such documents discovered from HBI's search. But, in the parties' subsequent e-mail exchange, counsel refused to confirm this agreement, instead reiterating its prior position that its production was made "subject to and without waiving" its objections.

Despite the fact that Mendenhall's document requests have been outstanding for over three and a half months, HBI has refused to provide any meaningful document production. After initially claiming that its delay was due to the lack of a protective order, HBI now claims that it is still in the process of reviewing the documents. HBI has

6

4822-9692-3921.1

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 6 of 17

also refused to provide any transparency as to exactly what documents it will agree to produce. *Id.* This type of game playing has frustrated the discovery process, as Mendenhall's counsel has been unable to obtain any documents from Hanesbrands's side or confirm exactly what documents HBI will agree to produce. *See Kinetic Concepts*, 268 F.R.D. at 248 (party's statement that it will produce documents "subject to" certain objections "confuses more than it clarifies" because it leaves the opposing party wondering what documents are being withheld). As a result, the Court should compel HBI to produce all non-privileged documents responsive to Mendenhall's document requests and list on a privilege log any responsive documents that have been withheld. With a mediation scheduled for October 16, 2012 and a fact discovery closure date of November 30, 2012, Mendenhall needs HBI to provide a prompt and complete document production by the end of this month. Otherwise, HBI's conduct will further impede the "just, speedy, and inexpensive determination" of this proceeding. FED. R. CIV. P. 1.

> **B.    HBI Should Be Compelled to Produce Documents Relating to Its Treatment of Other Endorsers Subject to a Morals Clause.**

Request nos. 30-32 and 35 seek documents relating to HBI's treatment of other endorsers subject to a morals clause, including documents relating to what factors Hanesbrands has considered in deciding whether to terminate other endorsers under a morals clause and a copy of the contract of any endorser who HBI considered terminating under a morals clause. HBI has refused to produce any documents that do not relate to Mendenhall.

These requests are reasonably calculated to lead to the discovery of admissible

7

evidence. As noted in the Court's Opinion on HBI's Motion for Judgment on the Pleadings, one of the issues in this case is whether HBI breached the covenant of good faith and fair dealing by making an unreasonable or arbitrary decision to terminate Mendenhall. Docket No. 18, at pp. 13-14. The factors HBI has considered in determining whether to terminate other endorsers in similar circumstances is likely to reveal whether HBI's conduct with respect to Mendenhall was unreasonable, arbitrary, or inconsistent with past practices. If HBI treated Mendenhall differently than other endorsers without a good reason to do so, this evidence would be relevant to show that HBI's termination of Mendenhall was unreasonable and arbitrary. *Team Gordon, Inc. v. Fruit of the Loom, Inc.*, No. 3:06-cv-201-RJC-DCK, 2010 WL 419952, *2 (W.D.N.C. Jan. 29, 2010) (in dispute regarding whether sponsor reasonably exercised morals clause to terminate an endorsement relationship with a NASCAR driver, evidence of the conduct of other NASCAR drivers was relevant to whether termination was reasonable).

**C. HBI Should Be Compelled to Produce Documents Relating to HBI's Relationship with Charlie Sheen and His Comments Regarding the September 11, 2001 Terrorist Attacks.**

One of Hanesbrands's previous endorsers was Charlie Sheen, who, in September 2009, made headlines for his public comments about the September 11, 2001 terrorist attacks. *See* Ex. 3. Despite Mr. Sheen's comments questioning the government's explanation for the September 11, 2001 terrorist attacks, Hanesbrands did not end its relationship with Sheen until December 2010, following Mr. Sheen's arrest on criminal charges. At that point, Hanesbrands stopped running advertisements featuring Mr. Sheen. Ex. 4. Notably, the HBI spokesperson who announced that the company was

8

4822-9692-3921.1

discontinuing its Charlie Sheen advertising campaign was Matt Hall, who has been disclosed as one of the witnesses principally involved in the decision to terminate Mendenhall. Ex. 4; Ex. 1, at ¶1.

In light of Mr. Sheen's comments about the September 11, 2001 attacks and the apparent lack of adverse action taken by HBI in response, Mendenhall's document request nos. 33-34, 36, and 41 sought: (1) a copy of Mr. Sheen's talent agreement with HBI; (2) documents relating to HBI's decision to terminate Sheen or to discontinue the Sheen advertising campaign; and (3) documents relating to Sheen's comments about September 11, 2001 and the public reaction to such comments. Each of Mendenhall's requests are likely to lead to the discovery of relevant information. For example:

- Documents regarding the public reaction to Sheen's comments are relevant to the reasonableness of HBI's purported conclusion that Mendenhall's comments were likely to bring him into public disrepute or offend the public. If HBI concluded that the public reaction to Sheen's comments would not harm the HBI brand, there is no reason to believe Mendenhall's comments would bring him into disrepute or offend the public.

- HBI documents relating to Sheen's comments about September 11, 2001 are likely to reveal whether Mendenhall's opinions were, as HBI claimed in its press release to ESPN.com, "inconsistent with the values of the Champion brand and with which we strongly disagreed." The fact that HBI apparently took no action in response to Sheen's comments contradicts HBI's conclusion that it needed to terminate its relationship with Mendenhall as a result of his comments.

- If Sheen had a similar morals clause to Section 17(a) of the Talent Agreement, HBI's failure to take any adverse action against Sheen would be inconsistent with HBI's purported conclusion that Mendenhall's comments met Section 17(a)'s standards.

In short, the fact that HBI gave Mr. Sheen a pass for his comments regarding September 11, 2001 is indicative of the unreasonableness of HBI's conclusion that Mendenhall's

9

comments would bring him into disrepute, offend the public, or harm an HBI brand. *Team Gordon, Inc.*, 2010 WL 419952, at *2. The fact that some of the same individuals (Matt Hall) were involved in both situations further highlights the relevance of the requests.

## II. RESPONSES TO INTERROGATORIES

### A. HBI Should Be Compelled to Identify All Persons Involved in Terminating the Talent Agreement.

Mendenhall's first interrogatory asked HBI to identify all persons involved in or consulted regarding the termination of Mendenhall's relationship with HBI. Ex. 1, at ¶1. In response, HBI objected to the request as overbroad and vague as to the terms "involved" or "consulted." HBI then responded that "it believes the following persons may have been principally involved in the termination . . . ." Ex. 1, at ¶1.

Mendenhall's request is reasonable and seeks information that will lead to the discovery of admissible evidence, namely, the persons who were involved in HBI's breach of the Talent Agreement. HBI's boilerplate objections serve no useful purpose other than to obstruct Mendenhall's effort to discover the facts. HBI's objections should be overruled and it should be compelled to provide a complete response to the interrogatory rather than identifying the persons who "may have been principally involved" (whatever that means) in Mendenhall's termination.

### B. HBI Should Be Compelled to Identify the Facts Relied Upon in Terminating Mendenhall.

Mendenhall's second interrogatory asked HBI to identify the facts, documents, and communications HBI relied upon in terminating the Talent Agreement. HBI

10

objected to the request as overly broad and vague as to the term "relied upon." Subject to its objections, HBI responded that the facts it relied upon "included but was not limited to . . . public reaction to Plaintiff's Tweets and 'letter of explanation' including, *inter alia*, comments made in blog posts, postings on social media sites, and news reports . . . ." Ex. 1, at ¶2. HBI did not provide any further specificity as to what "blog posts, postings on social media sites, and news reports" it relied upon. Likewise, in response to Mendenhall's document request seeking the documents relied upon by HBI, HBI stated that "documents and things may exist and may have been reviewed or considered but may not be in HBI's possession, custody, or control." Ex. 2, ¶5. In short, HBI has failed to provide any identification of the documents it relied upon in terminating the Talent Agreement.[1]

Mendenhall's request is reasonable and goes to the heart of the issue in this case—what facts HBI considered when terminating the Talent Agreement. Because this request is relevant to a core issue, HBI should be compelled to provide a complete response to the interrogatory. Any responsive documents should be identified by bates number. *Surrett v. Consolidated Metco, Inc.*, No. 1:11 cv 106, 2012 WL 88837, at *1 (W.D.N.C. Jan. 11, 2012) (when party relied on Rule 33(d) in responding to interrogatories, response that referred to all documents previously produced was inadequate).

### C. HBI Should Be Compelled to Identify the Facts Supporting Its Affirmative Defenses.

Interrogatories 3 through 7 issued by Mendenhall request that HBI identify the

---

[1] Notably, the documents relied upon in HBI's Answer to the Complaint were not even printed from the internet until several months after Mendenhall's termination.

11

4822-9692-3921.1

facts, documents, and communications supporting HBI's third, fourth, fifth, seventh, and eighth affirmative defenses. In its answer to the Complaint, HBI asserted a number of boilerplate affirmative defenses without identifying any supporting facts. For example, HBI alleges that Mendenhall's claims are barred by: (1) estoppel because Mendenhall failed to perform his contractual obligations (Third Affirmative Defense); (2) Mendenhall's prior material breach of the Talent Agreement (Fourth Affirmative Defense); (3) Mendenhall's failure fulfill conditions precedent or subsequent to the Talent Agreement (Fifth Affirmative Defense); (4) Mendenhall's breach of the covenant of good faith and fair dealing (Seventh Affirmative Defense); and (5) the doctrines of estoppel, waiver, and/or unclean hands (Eighth Affirmative Defense). No facts were alleged to support these boilerplate defenses.

Because HBI has not alleged any supporting facts, Mendenhall issued five interrogatories seeking to elicit the factual bases for HBI's defenses. In response, HBI's objected to the requests as "compound, overly broad and unduly burdensome" and responded that responsive information could be obtained by reviewing unidentified documents to be produced by HBI, HBI's answer, and HBI's Motion for Judgment on the Pleadings. Ex. 1, at ¶¶3-7. This response does not provide any substantive information to Mendenhall, particularly in light of HBI's failure to produce any documents. For example, Mendenhall does not know whether these defenses are based on Mendenhall's comments regarding the death of Osama bin Laden or some other alleged wrongful conduct. HBI should be compelled to provide a complete response explaining the factual bases for these affirmative defenses. Any responsive document should be identified by

12

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 12 of 17

bates number. *Surrett*, 2012 WL 88837, at *1 (when party relied on Rule 33(d) in responding to interrogatories, response that referred to all documents previously produced was inadequate).

> **D. HBI Should Be Compelled to Identify the "Values" of the Champion Brand and the Person Who Determined Those Values.**

Mendenhall's eighth interrogatory asked HBI to identify the values of the Champion brand and the persons involved in determining those values. This request relates to HBI's statement to ESPN.com that Mendenhall's comments regarding Osama bin Laden's death "were inconsistent with the values of the Champion brand." HBI objected to the request as "compound, overly broad and unduly burdensome" and vague as to the terms "involved in," "determining," and "values." HBI essentially refused to answer the interrogatory by identifying three individuals "who participate in the brand management of the Champion brand," which was not the question posed by the interrogatory. HBI also referred Mendenhall to unidentified, yet-to-be produced documents without identifying any "values" of the Champion brand.

Mendenhall's eighth interrogatory is reasonable and seeks relevant information regarding Hanesbrand's purported rationale for ending its relationship with Mendenhall. As such, HBI should be required to provide a complete response to this interrogatory. Any responsive document should be identified by bates number. *Surrett*, 2012 WL 88837, at *1 (when party relied on Rule 33(d) in responding to interrogatories, response that referred to all documents previously produced was inadequate).

**III. The Deadline for Completing Fact Discovery Should Be Extended From November 30, 2012 to March 8, 2013, Which is the Current Deadline for Completing Expert Discovery.**

HBI's conduct has delayed discovery in this case, necessitating an extension of the November 30, 2012 deadline for completing fact discovery. As a result of HBI's refusal to produce documents, Mendenhall has not been able to begin taking depositions. Based on HBI's delay in producing documents, the fact discovery deadline should be extended to March 8, 2013, which is the deadline for completing expert discovery. Such an extension will not impact the trial date or dispositive motion deadlines.

**IV. Hanesbrands Should Be Compelled to Pay the Reasonable Attorneys' Fees and Costs Incurred in Bringing This Motion.**

Under Federal Rule of Civil Procedure 37(a)(5), the Court may award the reasonable attorneys' fees and expenses incurred in bringing a motion to compel, unless: (1) the movant filed the motion before making a good faith effort to resolve the dispute; (2) the opposing party's nondisclosure was substantially justified; or (3) other circumstances make an award of expenses unjust.

First, as reflected in the Rule 37.1 Statement contained in the Motion to Compel, counsel made good faith efforts to resolve this dispute. *See also* Ex. 5.

Second, HBI's non-disclosure was not justified. Mendenhall's requests were reasonable and tailored to the issues in this case. HBI has provided no legitimate excuse for its failure to produce any documents other than 24 pages that were attached to Mendenhall's Complaint. HBI's objections to Mendenhall's interrogatories, such as its vagueness objections to terms like "involved in" or "relied upon," were frivolous.

14

4822-9692-3921.1

Third, no other circumstances make an award of expenses unjust. HBI's conduct has frustrated the orderly conduct of discovery, likely delayed a court-ordered mediation, and necessitated an extension of the deadline for completing fact discovery. Under these circumstances, Mendenhall should be awarded attorneys' fees and costs.

## CONCLUSION

For these reasons, and all reasons appearing of record, Mendenhall requests that the Court enter an order compelling HBI to do the following:

(1) Produce all non-privileged, responsive documents in response to Mendenhall's document request nos. 1-11, 13-29, 38-40, and 42;

(2) Produce a privilege log as to any documents over which HBI is claiming a privilege;

(3) Produce all non-privileged, responsive documents requested in Mendenhall's document request nos. 30-36, and 41;

(4) Provide a complete response to Mendenhall's Interrogatory Nos. 1-8, including an identification of any responsive documents by bates number; and

(5) Pay Mendenhall's reasonable attorneys' fees and costs incurred in bringing this motion.

Mendenhall further requests that the November 30, 2012 fact discovery deadline be extended until March 8, 2013, which is the deadline for completing expert discovery.

DATED: September 13, 2012　　　　　　　　Respectfully submitted,

/s/ Steven J. Thompson
Steven J. Thompson
sjthompson@uhlaw.com
Richard H. Tilghman IV
rtilghman@uhlaw.com
UNGARETTI & HARRIS LLP
3500 Three First National Plaza
Chicago, IL 60602
Telephone: 312-977-4400
Facsimile: 312-977-4405

/s/ Eric M. David
David W. Sar
N.C. State Bar No. 23533
dsar@brookspierce.com
Eric M. David
N.C. State Bar No. 38118
edavid@brookspierce.com
BROOKS, PIERCE, MCLENDON,
　HUMPHREY & LEONARD, L.L.P.
230 North Elm Street, Suite 2000
Greensboro, NC 27401
Telephone: 336-373-8850
Facsimile: 336-278-1001

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that a copy of the foregoing was served on the following counsel of record via electronic case filing procedures on September 13, 2012.

John F. Morrow, Jr.: jmorrow@wcsr.com
Brendan J. O'Rourke: borourke@proskauer.com
Victoria L. Loughery: vloughery@proskauer.com

/s/ Eric M. David
Eric M. David

17
4822-9692-3921.1

Case 1:11-cv-00570-JAB-LPA   Document 27   Filed 09/13/12   Page 17 of 17