# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 11-cv-570

RASHARD MENDENHALL,

Plaintiff,

　　　　　v.

HANESBRANDS INC.

Defendant.

**DEFENDANT HANESBRANDS INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF RASHARD MENDENHALL'S MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**PAGE**

I.    PRELIMINARY STATEMENT ........................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ......................................................................3

      A.    The Litigation................................................................................................3

      B.    The Parties' Discovery To-Date....................................................................5

III.  LEGAL ARGUMENT....................................................................................................8

      A.    Plaintiff's Motion To Compel Is Procedurally Improper............................8

      B.    Plaintiff's Requests For Documents Related To Endorsers Other Than
           Plaintiff Are Overbroad And Not Reasonably Calculated To Lead To
           The Discovery Of Admissible Evidence........................................................9

      C.    Hanesbrands Has Already Agreed To Produce All Non-Privileged
           Responsive Documents To Which Plaintiff Is Entitled ...............................13

           1.    Plaintiff's Objection To Hanesbrands' Agreement To Produce
                Documents "Subject To And Without Waiver Of" Its Objections
                Is Semantic And Contrary To Plaintiff's Own Positions.....................13

           2.    Plaintiff's Request That Hanesbrands Be Compelled To Produce
                 A Privilege Log Is Both Premature and Moot .....................................15

      D.    Plaintiff's Request To Compel Responses To Interrogatories
           Should Be Denied As Moot ........................................................................15

      E.    Hanesbrands Is Agreeable To A Reasonable Extension Of Discovery,
           But Not To The Almost Four-Month Extension Sought By Plaintiff........17

      F.    Plaintiff Is Not Entitled To Attorneys' Fees Or Costs For His
           Unnecessary And Premature Motion ..........................................................18

IV.  Conclusion ..........................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abulsaad v. Reliable & Loyal Mgmt.,*
  2012 WL 3762453 (E.D.N.C. Aug. 29, 2012)..........................................................................9

*Boykin Anchor Co. v. Wong,*
  2012 U.S. Dist. LEXIS 888 (E.D.N.C. Jan. 4, 2012) ............................................................19

*Cassell v. Monroe,*
  2010 U.S. Dist. LEXIS 129075 (E.D.N.C. Dec. 6, 2010) .......................................................9

*Dew Elec., LLC v. Mass Elec. Constr. Co.,*
  2010 U.S. Dist. LEXIS 44164 (W.D.N.C. Apr. 14, 2010) ....................................................10

*EEOC v. Dolgencorp, LLC,*
  2011 U.S. Dist. LEXIS 35195 (M.D.N.C. Mar. 31, 2011) ......................................................9

*Oppenheimer Fund Inc. v. Sanders,*
  437 U.S. 340 (1978)................................................................................................................9

*Team Gordon, Inc. v. Fruit of the Loom, Inc.,*
  2009 U.S. Dist. LEXIS 16917 (W.D.N.C. Feb. 19, 2009) ....................................................11

*Team Gordon, Inc v. Fruit of the Loom, Inc.,*
  2010 WL 419952 (W.D.N.C Jan. 29, 2010) ...................................................................10, 11


**OTHER AUTHORITIES**

Fed. R. Civ. P. 33(d) ................................................................................................................17

Fed. R. Civ. P. 33(d)(1)...........................................................................................................17

Fed. R. Civ. P. 37.................................................................................................................1,20

Fed. R. Civ. P. 37(a) ...................................................................................................................1

Fed. R. Civ. P. 37(a)(1)...................................................................................................8, 9, 18

Fed. R. Civ. P. 37(a)(5).............................................................................................................18

Fed. R. Evid. 403 ......................................................................................................................11

Local Rule 37.1(a) ......................................................................................................1, 8, 9, 19

Pursuant to Fed. R. Civ. P. 37 and Local Rule 37.1, Defendant Hanesbrands Inc. ("Hanesbrands"), by its attorneys, hereby submits this memorandum in opposition to the motion of Plaintiff Rashard Mendenhall ("Plaintiff") to Compel Production Of Documents And Responses To Interrogatories (the "Motion to Compel").

## I.  PRELIMINARY STATEMENT

Plaintiff's motion to compel is entirely premature.  Plaintiff rushed his request for judicial intervention without making a good faith attempt to resolve or narrow the issues raised by his motion.  In fact, Plaintiff knowingly filed this Motion *after* Hanesbrands had already agreed to provide the majority of the information Plaintiff now seeks to compel and *before* Hanesbrands even had a chance to respond to Plaintiff's request for (among other things) the discovery extension sought by this motion – facts which Plaintiff conveniently failed to disclose to the Court.  Despite Plaintiff's disregard for the procedural requirements applicable to this motion, Plaintiff now asks the Court to grant his motion to "compel" the production of information Plaintiff already possesses and, astoundingly, asks the Court to require Hanesbrands to pay the costs and fees of Plaintiff's unnecessary and premature motion.  The Court should decline to entertain Plaintiff's unreasonable and improper requests.

First, Plaintiff failed to fulfill the mandatory requirements set forth in Fed. R. Civ. P. 37(a) and Local Rule 37.1, a prerequisite for this discovery motion.  In addition to failing to file the required certificate of good faith with Plaintiff's motion, it is apparent from Plaintiff's written correspondence and hasty filing that Plaintiff never intended to

1

negotiate these discovery issues in good faith and instead planned to file his motion unless Hanesbrands capitulated to all of Plaintiff's demands, however unreasonable they might be. Despite the fact that Hanesbrands had already made numerous concessions, and had not even had a chance to respond to Plaintiff's most recent requests, Plaintiff unilaterally cut-off any further attempts to resolve or narrow the discovery dispute and filed this motion. On this basis alone, the motion should be denied.

Second, Plaintiff's requests for documents and information concerning Hanesbrands' endorsers other than Plaintiff are irrelevant to the extent that other endorsers were not subject to the same morals clause as Plaintiff. In an attempt to resolve this issue without court intervention, Hanesbrands had offered to produce (and has now produced) relevant portions of any such endorser's agreement (including the moral clause) in order to demonstrate that Plaintiff's morals clause was materially different. Since Hanesbrands' treatment of endorsers who were not subject to the same morals clause as Plaintiff is irrelevant, the Court should deny Plaintiff's motion to compel the production of any further documents relating to such other endorsers.

Third, as described further below, the majority of Plaintiff's motion seeks the production of documents and interrogatory answers that have already been provided. Those portions of Plaintiff's motion should be denied as moot.

Finally, Plaintiff has not demonstrated entitlement to his request for attorneys' fees and costs. As set forth further below, Hanesbrands has acted reasonably and in good

faith during the course of discovery; in contrast, Plaintiff has acted unreasonably and prematurely in burdening the Court and Hanesbrands with this motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     The Litigation

In May of 2008, the Parties entered into a Talent Agreement (the "Talent Agreement"), whereby Plaintiff agreed to advertise and promote, and to allow Hanesbrands to use his name and likeness to advertise and promote, CHAMPION® products, in exchange for a generous compensation package to be paid by Hanesbrands. *See* Dkt. 1 (Complaint, Ex. A at 2-3 and B at 1-3). The Talent Agreement was amended on or about August 31, 2010, with an effective date of May 1, 2011. *See Id.* Ex. B (the "Extension Agreement").

In order to protect the goodwill associated with Hanesbrands' CHAMPION® branded products, Paragraph 17 of the Talent Agreement, entitled "Mendenhall's Reputation/Statement & Acts" (the "Morals Clause"), gave Hanesbrands the right to terminate the Talent Agreement in the event that Plaintiff engaged in conduct that could reflect negatively on the CHAMPION® brand (or its parent company, Hanesbrands). Specifically, the Morals Clause, as specifically amended by the Extension Agreement, gave Hanesbrands an immediate right to terminate the Agreement if Plaintiff became "involved in any situation or occurrence. . . tending to bring Mendenhall into public disrepute, contempt, scandal or ridicule, or tending to shock, insult or offend the majority of the consuming public or any protected class or group thereof . . . ." *Id.* at 4 (emphasis

3

added).  The Morals Clause expressly stated that "HBI's decision on all matters arising under this Section 17(a) shall be conclusive." *Id.* (emphasis added).

On May 2, 2011, Plaintiff posted a number of comments to his Twitter feed which a) criticized persons who were perceived to be "celebrating" the news of Osama bin Laden's death, and b) suggested that the September 11, 2001 attacks on the Twin Towers and the Pentagon were perpetrated by the United States government, rather than by Osama bin Laden and al Qaeda terrorists (the "May 2nd Tweets").  *See* Dkt. 1 ¶ 35. Plaintiff's statements resulted in almost instantaneous negative public reaction.  On May 4, 2011, Plaintiff posted a blog entry entitled "Clarification," which drew further negative attention to Plaintiff and his statements.  *See Id*. at ¶ 36.  Hanesbrands thereafter exercised its contractual right under the Morals Clause to terminate Plaintiff on May 5, 2011.  *See Id.* at Ex. C.

On July 18, 2011 plaintiff filed this suit alleging that his termination constituted a breach of the Talent Agreement.  Hanesbrands answered Plaintiff's complaint on August 3, 2011 (*see* Dkt. 10), and simultaneously filed a motion for a judgment on the pleadings (*see* Dkt. 11).  On April 12, 2012, the Court denied HBI's motion (*see* Dkt. 18), and discovery commenced on May 31, 2012 with the Court's entry of the parties' proposed scheduling order.  (*See* May 31, 2012 Text Order).

4

B.      **The Parties' Discovery To-Date**

Hanesbrands served Plaintiff with its first set of interrogatories and documents requests on May 31, 2012, and Plaintiff served written responses and objections on August 6, 2012.  *See* Declaration of Victoria Loughery ("Loughery Decl."), Ex. 12.

Plaintiff served his first set of interrogatories and document requests on Hanesbrands on June 1, 2012.  On August 7, 2012, Hanesbrands served its written responses and objections to Plaintiff's discovery requests, along with an initial production of twenty-four pages of documents that were not confidential.[1]  In Hanesbrands' responses and objections, Hanesbrands stated that to the extent that Plaintiff's requests called for confidential documents, Hanesbrands would produce them subject to the entry of an appropriate protective order.  *See id.,* Ex. 1. Hanesbrands sent Plaintiff a proposed protective order on August 23, 2012.  *See id.,* Ex. 2.  The protective order was entered by the court on September 10, 2012 (*see* Dkt. 25), and Hanesbrands served an additional production of over 3,000 documents (approximately 8,800 pages) just nine days later.  *See id.* Ex. 3.

On August 23, 2012, Plaintiff's counsel sent Hanesbrands a letter raising several concerns with respect to Hanesbrands' discovery responses.  Similarly, on September 7, 2012 counsel for Hanesbrands sent Plaintiff a letter concerning a number of apparent

---

[1] Contrary to Plaintiff's insinuation (*see* Motion to Compel at 5), Hanesbrands never represented to Plaintiff that it was prepared to make a complete production of documents on August 7, 2012, or that the "only thing standing in the way" of Hanesbrands' further document production was the entry of the protective order.  Nor is it Hanesbrands' fault that "plaintiff's counsel understood" it that way.  In any event, Hanesbrands produced documents as soon as was practicable after the protective order was entered by the Court on September 10, 2012.  Indeed, Hanesbrands' produced approximately 8,800 pages of documents the next week – just as Hanesbrands had said it would do. *See* Loughery Decl.,Ex. 3.

deficiencies in Plaintiff's document production. *See id.,* Ex. 4. On September 10, 2012, the parties held an initial teleconference in an attempt to resolve the parties' outstanding discovery issues. Loughery Decl. ¶ 11.

The parties' subsequently exchanged additional correspondence in an attempt to further clarify and resolve the issues. *See id.,* Exs. 5-10. Ultimately, with regard to Plaintiff's objections to the sufficiency of Hanesbrands' interrogatory answers, counsel for Hanesbrands: 1) agreed to review Hanesbrands' response to Interrogatory No. 1 and identify any additional persons who may have been "involved in" or "consulted" concerning the decision the termination decision; 2) review its responses to Interrogatory No. 2 to see if it could identify with specificity any additional responsive facts, documents or communications; 3) identify, by Bates number, documents supporting Hanesbrands' answers to Interrogatory Nos. 3-8; 4) review Hanesbrands' response to Interrogatory No. 9 to see if Hanesbrands could identify with specificity any additional facts or documents; and 5) identify the specific date on which Hanesbrands' decision to terminate the Talent Agreement was made. *See* Ex. 8. Hanesbrands since served its revised and amended responses providing such information. *See id.,* Ex. 11.

With regard to Plaintiff's issues concerning Hanesbrands responses and objections to Plaintiff's document requests, Hanesbrands' counsel: 1) confirmed that, where it had agreed to produce "responsive, non-privileged documents" to a particular request, it would, subject to and without waiving any of its previous objections, produce all such responsive, non-privileged documents; 2) agreed to produce documents in response to

6

Requests Nos. 12 and 37 (to which it had previously objected to in their entirety); 3) agreed to produce a copy of any endorsement agreement which Hanesbrands terminated for breach of such agreement's morals clause; and 4) confirmed that Hanesbrands would provide a privilege log for any documents withheld on that basis. *See id.* ¶ 15 and Ex. 8.

Despite Hanesbrands' agreement to the majority of Plaintiff's requests, on September 11, 2012, Plaintiff nonetheless threatened to file a motion to compel if Hanesbrands did not agree to withdraw all of its objections to Plaintiff's interrogatories and document requests, and make an immediate, overnight production of all responsive documents. *See id.,* Ex. 7.

On September 12, 2012, Hanesbrands informed Plaintiff that Hanesbrands would not be able to comply with that demand, but stated that Plaintiff's threat to file a motion to compel was premature in light of the fact that Hanesbrands would be able to serve a large supplemental production of documents the following week. *See id.,* Ex. 8. Hanesbrands also pointed out that Plaintiff himself had numerous document production deficiencies that still needed to be resolved. *Id.*

That night, at 11:05 pm (well after the close of business), Plaintiff's counsel informed Hanesbrands that Plaintiff was not satisfied with Hanesbrands' response and intended to file a motion to compel concerning the aforementioned issues. Plaintiff's late-night email also included a number of *new* requests, including that Hanesbrands: 1) agree to shorten the briefing schedule concerning the motion to compel; 2) agree to a phone call with the Court to resolve the issues on the motion to compel; 3) agree to

7

produce all documents before October 1st or to push back the parties' October 16th mediation; and 4) agree to a four month extension of the fact discovery deadline, from November 30, 2012 to March 8, 2013. *See id.,* Ex. 9. Hanesbrands' counsel responded the following day, on September 13, 2012, stating that they would need to confer with Hanesbrands concerning the new requests. *See id.,* Ex. 10. Plaintiff nevertheless proceeded to file his motion to compel later that day without waiting for Hanesbrands' response.

The following week, as it had agreed to do prior to Plaintiff filing this motion, Hanesbrands served its second production of documents, totaling over 8,800 pages (approximately 3,300 documents). *See id.,* Ex. 3.[2] Likewise, as Hanesbrands had agreed to do prior to this motion, Hanesbrands served Plaintiff with its revised and amended responses to Plaintiff's interrogatories on October 5, 2012. *See id.,* Ex. 11

### III.   LEGAL ARGUMENT

**A.   Plaintiff's Motion To Compel Is Procedurally Improper**

As a preliminary matter, Plaintiff's motion to compel should be denied because it fails to include the required certificate pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1(a). A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37

---

[2] To date Plaintiff has only produced 551 documents, including just 20 documents from Plaintiff's personal files. Incredibly, Plaintiff has only produced five personal emails and no text messages relating to his Tweets, any reaction thereto, the termination of the Talent Agreement, or other matters relating to this case.

(a)(1); *See also* Local Rule 37.1(a) ("The court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord...."); *EEOC v. Dolgencorp, LLC,* 2011 U.S. Dist. LEXIS 35195, at *34 (M.D.N.C. Mar. 31, 2011) (same) (citing Fed. R. Civ. P. 37 and Local Rule 37.1).

Moreover, the fact that Plaintiff abruptly filed this motion *after* Hanesbrands had agreed to provide Plaintiff with most of the information Plaintiff seeks through the motion, and *before* Hanesbrands even had a chance to respond to the requests in Plaintiff's late-night email of September 12th, begs the question as to whether Plaintiff's attempts to resolve the parties' discovery issues lacked the good faith required by Fed.R.Civ.P.37 (a)(1) and Local Rule. 37.1(a).

In light of Plaintiff's counsel's failure to certify what he could not, the Court should deny Plaintiff's motion altogether. *See Cassell v. Monroe*, 2010 U.S. Dist. LEXIS 129075, at *2 (E.D.N.C. Dec. 6, 2010)(denying motion to compel that failed to comply with rule requiring certification of good faith efforts to resolve disputes).

**B.**  **Plaintiff's Requests For Documents Related To Endorsers Other Than Plaintiff Are Overbroad And Not Reasonably Calculated To Lead To The Discovery Of Admissible Evidence**

Although the scope of discovery under the Federal Rules of Civil Procedure is broad, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (citations omitted). Accordingly, discovery that is "not reasonably calculated to lead to the discovery of

admissible evidence is not within the scope of Rule 26(b)(1)." *Id.* at 352. *Cf. Abulsaad v. Reliable & Loyal Mgmt.*, 2012 WL 3762453, at *1 (E.D.N.C. Aug. 29, 2012). Moreover, "[a] litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, oppress or, that causes undue burden or expense to the opposing party." *Dew Elec., LLC v. Mass Elec. Constr. Co.*, 2010 U.S. Dist. LEXIS 44164, at *4 (W.D.N.C. Apr. 14, 2010).

Plaintiff's Document Request Nos. 30-32 and 35 seek documents related to Hanesbrands' treatment of other endorsers subject to a morals clause. Plaintiff's Document Request Nos. 33-34 and 36 seek information specific to Hanesbrands' relationship with Charlie Sheen. Hanesbrands originally objected to producing documents in response to any of these requests on the ground that they were overly broad and sought irrelevant information.[3]

First, Hanesbrands' treatment of endorsers other than Plaintiff are irrelevant to the issue of whether Hanesbrands had a contractual right to terminate Plaintiff based on his actions and the specific language of his Morals Clause. Moreover, the requests are overly broad and seek irrelevant information to the extent that they seek documents concerning endorsers who were not subject to the <u>same morals clause</u> as was contained in the revised Section 17(a) of Plaintiff's Talent Agreement.

In support for the argument that such documents are relevant, Plaintiff cites *Team Gordon, Inc v. Fruit of the Loom, Inc.*, 2010 WL 419952, at *1 (W.D.N.C Jan. 29,

---

[3] Hanesbrands' further objected to these requests to the extent that they required the production of confidential information that Hanesbrands is contractually precluded from voluntarily disclosing.

2010). However, *Team Gordon* does not support Plaintiff's contention. In fact, the Court in *Team Gordon* expressly prohibited the introduction of evidence concerning "other morals clauses not at issue at issue in this case." *Id.*

Moreover, *Team Gordon* is also factually inapposite. There, plaintiff, a race car driver, sued for wrongful termination of an endorsement agreement after he was terminated for throwing his helmet at another driver (who plaintiff believed caused him to crash) during a race and for cursing during a post-accident interview.[4] The Court in *Team Gordon* allowed the introduction of evidence concerning "other drivers' controversial behavior," noting such evidence was relevant to the issue of whether plaintiff's behavior during the race was consistent with "NASCAR culture." *Id.* The Court found NASCAR culture to be relevant to whether defendant's decision to terminate him for his "on-track conduct" actions during a race was reasonable. *Id.* at *2.

Unlike in *Team Gordon*, Plaintiff here is not seeking documents concerning other NFL players' on-the-field behavior in order to prove his May 2nd Tweets and "Clarification" were consistent with "NFL culture."[5] Rather, Plaintiff seeks information about endorsers who were not subject to the same contractual terms as Plaintiff at the time Plaintiff was terminated – *i.e.,* exactly the information that the Court in *Team Gordon* ruled was irrelevant (and likely inadmissible under Fed. R. Evid. 403). *Id.* at *1.

---

[4] These facts are recounted in a later decision in the same case. *See Team Gordon, Inc. v. Fruit of the Loom, Inc.*, 2009 U.S. Dist. LEXIS 16917, at *9-10 (W.D.N.C. Feb. 19, 2009).
[5] Nor would such information concerning NFL culture be relevant, since Plaintiff was not terminated for his on-the-field reaction to another player but, rather, for a series of inflammatory statements concerning a highly-sensitive and divisive off-the-field issue that had nothing to do with the sport he plays.

Indeed, during the Parties' September 10th meet and confer, counsel for Plaintiff conceded that documents pertaining to endorsers other than Plaintiff would be irrelevant if the endorsers were subject to different morals clauses. *See* Loughery Decl., ¶ 15 and Ex. 8. Although Plaintiff's counsel now denies making that concession (*see id.,* Ex. 9), Plaintiff's brief in support of his motion to compel ("Mov. Br.") implicitly acknowledges that documents concerning other endorsers are only relevant if the other endorsers were similarly situated to Plaintiff. *See* Mov. Br. at 8-9.

Notwithstanding the above, in an effort to resolve the parties' dispute on this issue Hanesbrands informed Plaintiff's counsel on September 12th that it would agree (subject to and without waiver of its previous objections) to produce a copy of any endorsement agreement which Hanesbrands terminated for violation of the morals clause. *See* Loughery Decl., Ex. 8. Plaintiff refused to accept Hanesbrands' offer and proceeded to file the instant motion.

Nonetheless, Hanesbrands did in fact include in its production an appropriately redacted copy of the only endorsement agreement – the Charlie Sheen endorsement agreement – that is responsive to Plaintiff's Document Request No. 35 (and No. 33).[6] The Sheen Agreement confirms Hanesbrands' position that documents concerning Hanesbrands' relationship with Mr. Sheen are irrelevant, since (unlike the morals clause in Plaintiff's Agreement) under the terms of the Sheen Agreement, Hanesbrands' right to terminate could not be triggered by anything less than the filing of criminal charges

---

[6] Due to third-party confidentiality concerns, Hanesbrands only produced the relevant portions (i.e., the names of the parties to the agreement, the dates such agreement was in effect, and the morals clause contained in the agreement).

against Mr. Sheen. Thus, regardless of the public reaction to Mr. Sheen's 2009 statements concerning the terrorist attacks of September 11, 2011, such statements did not fall within the scope of actions that would trigger Hanesbrands' termination right under the morals clause of his agreement.

As already noted above, the morals clause in Plaintiff's Talent Agreement contained a much broader termination right. Therefore, documents concerning Hanesbrands' endorsement relationship with Mr. Sheen are irrelevant and beyond the scope of discovery permitted by the Federal Rules.[7]

Accordingly, Plaintiff's motion to compel the production of documents concerning any Hanesbrands' endorser other than Plaintiff should be denied.

### C. Hanesbrands Has Already Agreed To Produce All Non-Privileged Responsive Documents To Which Plaintiff Is Entitled

#### 1. Plaintiff's Objection To Hanesbrands' Agreement To Produce Documents "Subject To And Without Waiver Of" Its Objections Is Semantic And Contrary To Plaintiff's Own Positions

Plaintiff objects to Hanesbrands' agreement to produce documents "subject to and without waiver of" Hanesbrands' previously stated objections to the particular requests. *See id.,* Exs. 5-9. Plaintiff contends that Hanesbrands' preservation of its objections is nothing but "game playing," urges the Court to compel Hanesbrands to "produce all responsive, non-privilege documents" and to "list on a privilege log any responsive documents that have been withheld." Mov. Br. at 7.

---

[7] Since the Sheen Agreement is the only document responsive to Plaintiff's Document Request No. 35, Plaintiff's Document Request Nos. 30-32 are duplicative of Document Request Nos. 33-34, which pertain to Mr. Sheen.

13

Plaintiff's characterization of Hanesbrands' preservation of rights is perplexing, particularly in light of the fact that Plaintiff has done precisely the same thing in response to Hanesbrands' document requests. Specifically, Plaintiff's General Objections state:

> [w]here Plaintiff has stated that he will respond and produce documents, such statements do not imply or constitute a representation that such documents are known to exist or do, in fact, exist. To the extent such documents are responsive, are located after a reasonably diligent search, and are not subject to any objection or privilege, they will be produced as provided for herein.

*See* Loughery Decl., Ex. 12 (General Objection No. 9). Plaintiff's General Objection No. 11 further provides:

> These general objections shall be deemed to be applicable to and continuing with respect to each of the document requests responded to below. <u>The general objections asserted above are incorporated into each and every one of the responses set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request</u>.

*Id.* (emphasis added). In other words, like Hanesbrands, where Plaintiff has agreed to produce documents, he has done so subject to and without waiver of his objections.

Although Plaintiff now asserts that he "agreed to produce documents notwithstanding his objections," (*see id.,* Ex. 7) that assertion is mere semantics. Unless Plaintiff's agreement to produce documents "notwithstanding" his objections, means that (contrary to the express language in Plaintiff's responses and objections) he agrees to *waive all prior objections, including privilege*, there is simply no substantive difference between Plaintiff's and Hanesbrands' positions.

14

In any event, Hanesbrands has not withheld (and does not intend to withhold) any responsive, non-privileged information, other than documents relating to other endorsers as detailed above.  Accordingly, Plaintiff's motion to compel the production of "all responsive, non-privileged documents" should be denied.

      **2.**      *Plaintiff's Request That Hanesbrands Be Compelled To Produce A Privilege Log Is Both Premature and Moot*

Plaintiff's request that the Court "compel" Hanesbrands to provide a privilege log is merely further evidence of the premature (and perhaps hypocritical nature) of Plaintiff's motion.  Though Plaintiff did not see fit to disclose this fact to the Court, Hanesbrands had previously informed Plaintiff – several times, in fact – that it would produce a privilege log as soon as all privileged documents had been identified.  *See id.,* Exs. 5, 12.  Plaintiff also conveniently failed to mention that he has not provided Hanesbrands with a privilege log, although he purports his production to be complete.

Nonetheless, in an effort to resolve this issue, Hanesbrands has asked Plaintiff to agree to a mutual exchange privilege logs; Plaintiff has proposed the parties exchange logs on or before October 19, 2012.  *See id.,* Ex. 13.   Accordingly, Plaintiff's request that Hanesbrands be compelled to produce a privilege log should be denied.

**D.**      <u>**Plaintiff's Request To Compel Responses To Interrogatories Should Be Denied As Moot**</u>

As indicated above, even before Plaintiff filed the instant motion, Hanesbrands had agreed to supplement its answers to Plaintiff's interrogatories – a fact which Plaintiff conveniently neglected to disclose to the Court.  Hanesbrands served its supplemental

responses and objections on October 5, 2012. *See id.,* Ex. 11. However, to the extent that Plaintiff may claim he has still not received "complete" responses, Hanesbrands addresses each interrogatory below:

**Interrogatory No. 1 (identify all persons "involved in" or "consulted" regarding the termination decision):** Hanesbrands revised its response to identify all additional people who could be construed to have been "involved in" or "consulted" about the decision to terminate the Talent Agreement. Indeed, Hanesbrands' amended response to this interrogatory identifies a total of 8 people who may have been involved at some level with that decision. *See id.,* Ex. 11 at 6.

**Interrogatory No. 2 (identify all facts, documents and communications relied on in the termination decision):** Hanesbrands continues to object to this interrogatory as overly broad and unduly burdensome. It is simply unreasonable for Plaintiff to expect Hanesbrands to identify "all" facts, documents or communications that were relied upon by the various people "involved in" the decision to terminate Plaintiff in May 2011. Regardless, Hanesbrands has revised its response to identify with more specificity the types of facts, documents and communications relied upon. *See id.,* Ex. 11 at 6. Hanesbrands has also made a supplemental production of documents which includes additional facts, documents and communications responsive to this interrogatory.

**Interrogatory Nos. 3 through 7 (identify all facts, documents and communications supporting Hanesbrands' affirmative defenses):** As with Interrogatory No. 2, Hanesbrands continues to object to these interrogatories as overly broad and unduly

16

burdensome to the extent they purport to require Hanesbrands to identify "all facts, documents and communications." Such a request is simply unreasonable considering the size of the company, number of people involved, and passage of time. Nevertheless, pursuant to Fed. R. Civ. P. 33(d)(1), Hanesbrands has revised its answers to these interrogatories to identify by Bates numbers documents that include facts and communications responsive to these requests. *See id.,* Ex. 11 at 7-16.

**Interrogatory No. 8 (identify all persons and documents concerning the "values of the Champion® brand):** Hanesbrands continues to object to this interrogatory as overly broad and unduly burdensome to the extent it purports to require Hanesbrands to identify "all" persons" and "all documents" relating to the values of the CHAMPION® brand. The CHAMPION® brand has been in existence for 100 years; it is virtually impossible to identify all persons and documents that relate to the values of the brand. As a compromise, however, Hanesbrands has identified the people who were responsible for brand management at the time of Plaintiff's termination, and has supplemented its interrogatory response to identify responsive documents by Bates numbers, pursuant to Fed. R. Civ. P. 33(d). *See id.,* Ex. 11 at 16-17.

**E.    Hanesbrands Is Agreeable To A Reasonable Extension Of Discovery, But Not To The Almost Four-Month Extension Sought By Plaintiff**

First, Plaintiff's accusations that Hanesbrands has "delayed discovery" and "refused to produce documents" are baseless. There was no provision in the scheduling order – nor any agreement by the parties – that all documents be produced by a particular date. Nonetheless, Hanesbrands made every effort to review and produce its documents

17

as expeditiously as possible. Indeed, Plaintiff did not even raise the issue of Hanesbrands' production until September 11, 2011, the day after the protective order was entered by the Court. Rather than "refusing" to produce documents, Hanesbrands responded to Plaintiff that it was still reviewing documents, but that it would be able to make a production the following week – which Hanesbrands did.

In any event, if Plaintiff's counsel had given Hanesbrands a chance to respond to his late-night extension request before filing this motion, he would have known that Hanesbrands was agreeable to a reasonable extension of discovery. Accordingly, Hanesbrands proposes that fact discovery be extended from November 30, 2012 to January 25, 2012, and that the March 6, 2013 expert discovery deadline be adjourned to March 15, 2013. The requested extensions do not affect the deadline for dispositive motions or the trial date. Plaintiff has agreed to this proposed schedule. *See id.,* Ex. 15.

## F. <u>Plaintiff Is Not Entitled To Attorneys' Fees Or Costs For His Unnecessary And Premature Motion</u>

Plaintiff has utterly failed to demonstrate his entitlement to attorneys' fees and expenses under Fed. R. Civ. P. 37(a)(5). First, as noted above, Plaintiff's efforts to resolve this dispute were not made in good faith. Plaintiff's bad faith is evidenced by, *inter alia*: (1) Plaintiff's failure to provide the certification required by Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1(a); (2) Plaintiff's failure to disclose to the Court that Hanesbrands had already agreed to produce most of the documents and information sought by Plaintiff before Plaintiff filed this motion; (3) Plaintiff's failure to disclose to the Court that Plaintiff has not produced a privilege log; (4) Plaintiff's failure to disclose

18

to the Court the fact that his own production in this matter has been severely deficient (*see id.,* Ex. 4); and (5) Plaintiff's decision to hastily file the motion to compel without ever giving Hanesbrands a chance to respond to several of the requests contained in Plaintiff's 11:05 pm email of September 12.

Second, Hanesbrands has a reasonable, good faith basis for all of its objections to Plaintiff's document requests and interrogatories. *See id..*, Exs. 5, 6, 8, 11. Nonetheless, as part of Hanesbrands' continued good faith attempts to resolve the issues raised by Plaintiff in his August 23rd letter, Hanesbrands agreed to provide (and has already provided) Plaintiff with nearly all of the documents and information he requested. Hanesbrands has also endeavored to produce its documents as expeditiously as possible.[8]

Third, an award of attorneys' fees would clearly be unjust given the reasonableness of Hanesbrands' actions and Plaintiff's corresponding *unreasonableness* during the meet and confer process that led up to this motion. Such award would also be unjust considering the deficiencies in Plaintiff's own document production. *See id.*, Ex. 7.

Accordingly, Plaintiff's request for attorneys' fees and costs should be denied. If anything, there is ample basis for the Court to award Hanesbrands its reasonable costs and attorneys' fees incurred in opposing Plaintiff's unnecessary and premature motion. *See Boykin Anchor Co. v. Wong*, 2012 U.S. Dist. LEXIS 888, at *20 (E.D.N.C. Jan. 4,

---

[8] Indeed, Plaintiff's accusation that Hanesbrands is responsible for the "likely delay [of] a court-ordered mediation" (Motion to Compel at 15) is particularly egregious, given that: 1) it was *Plaintiff* who requested that the parties adjourn the mediation from its original September date to October 16th (*see* Dkt. 21); and 2) after filing this motion Plaintiff informed Hanesbrands that he cannot attend the October 16th mediation due to a team practice that is now scheduled for that day. Plaintiff has proposed the mediation be re-scheduled for November 27th. *See* Loughery Decl., ¶¶ 20, 23 and Ex. 15.

2012) ("Rule 37 provides that where a motion to compel is denied, the court 'must... require the movant, the attorney filing the motion, or both to pay the party who opposed the motion its reasonable expenses . . . including attorney's fees' unless the motion 'was substantially justified or other circumstances make an award of expenses unjust.'").

## IV.    CONCLUSION

For all of the foregoing reasons, Hanesbrands respectfully requests that Plaintiff's motion to compel is denied in its entirety, and that Hanesbrands be awarded the reasonable costs and attorneys' fees incurred in opposing Plaintiff's motion.

Dated:        October 9, 2012

                                    /s/ John F. Morrow, Jr.

                                John F. Morrow, Jr. (N.C. State Bar No. 23382)
                                Brent F. Powell (N.C. State Bar No. 41938)
                                Womble Carlyle Sandridge & Rice, LLP
                                One West Fourth Street
                                Winston-Salem, NC  27101
                                United States of America
                                Telephone: (336) 721-3584
                                Facsimile: (336) 733-8429
                                jmorrow@wcsr.com
                                brpowell@wcsr.com

                                Brendan J. O'Rourke
                                Victoria L. Loughery
                                PROSKAUER ROSE LLP
                                11 Times Square
                                New York, New York 10036-8299
                                Telephone:    (212) 969-3000
                                Facsimile:     (212) 969-2900
                                borourke@proskauer.com
                                vloughery@proskauer.com
                                *Attorneys for Defendant Hanesbrands, Inc.*

20