

Positive
As of: Oct 09, 2012

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. DOLGENCORP, LLC, d/b/a DOLLAR GENERAL, Defendant.

### 1:09CV700

### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### 2011 U.S. Dist. LEXIS 35195

**March 31, 2011, Decided**
**March 31, 2011, Filed**

**CASE SUMMARY:**

**OVERVIEW:** In this Title VII action, defendant's motion to compel was granted because the cases cited by plaintiff did not establish that the information and records sought by defendant lack relevance and plaintiff had not met its burden of establishing that defendant made the requests in Interrogatory Nos. 9 and 10 and Request Nos. 13 and 14 for an improper purpose.

**OUTCOME:** Defendant's motion to compel granted.

**CORE TERMS:** discovery, charging parties, deadline, interrogatory, medical records, responsive, emotional, expert reports, scheduling, discovery requests, e-mail, expert witnesses, emotional distress, authorization, relevance, electronic, rebuttal, deposition, counselor's, signature, local rules, disclosure, medical information, good cause, lawsuit, similarly situated, healthcare provider, physical injury, disease symptom, medication

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Relevance*

[HN1]The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. Fed. R. Civ. P. 26. Accordingly, under the Federal Rules of Civil Procedure, unless otherwise limited by court order parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery > Relevance*
[HN2]All discovery is subject to the limitations imposed by Fed. R. Civ. P. 26(b)(2)(C). Fed. R. Civ. P. 26(b)(1).

*Civil Procedure > Discovery > Undue Burdens*
[HN3]See Fed. R. Civ. P. 26(b)(2)(C).

*Civil Procedure > Discovery > General Overview*
[HN4]Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted.

*Civil Procedure > Discovery > General Overview*
*Civil Procedure > Discovery > Motions to Compel*
[HN5]Although the Federal Rules of Civil Procedure

provide that the primary responsibility for conducting discovery rests with the litigants, who are obliged to act responsibly and avoid abuse, the Rules also acknowledge the reality that the discovery process cannot always operate on a self-regulating basis. The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing a party seeking discovery to move for an order compelling an answer, designation, production, or inspection. This motion may be made if a party fails to respond that inspection will be permitted as requested under Fed. R. Civ. P. 34. Fed. R. Civ. P. 37(a)(3)(B). A motion to compel must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1); M.D.N.C. R. 37.1(a).

### Civil Procedure > Discovery > Motions to Compel
### Evidence > Procedural Considerations > Burdens of Proof > Allocation
### Evidence > Procedural Considerations > Burdens of Proof > Initial Burden of Persuasion

[HN6]Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.

### Civil Procedure > Discovery > Undue Burdens

[HN7]A court should deny defendant's motion to compel if the burden of the proposed discovery outweighs its likely benefit, Fed. R. Civ. P. 26(b)(2)(C), and/or if "good cause" exists to believe that the discovery would result in unwarranted annoyance, embarrassment, or oppression, Fed. R. Civ. P. 26(c)(1).

### Civil Procedure > Discovery > Misconduct

[HN8]In addition to establishing a process for judicial resolution of discovery disputes, Fed. R. Civ. P. 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery.

### Civil Procedure > Discovery > Misconduct

[HN9]See Fed. R. Civ. P. 37(a)(5)(A).

### Civil Procedure > Discovery > Misconduct

### Evidence > Procedural Considerations > Burdens of Proof > Allocation

[HN10]The Fourth Circuit has explained that a legal position is substantially justified if there is a genuine dispute as to proper resolution or if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact. The burden to show that its failure to comply was either substantially justified or harmless is borne by the party facing sanctions under Fed. R. Civ. P. 37.

### Civil Procedure > Sanctions > Baseless Filings > Signing Requirements

[HN11]See Fed. R. Civ. P. 11(a).

### Civil Procedure > Sanctions > Baseless Filings > Signing Requirements

[HN12]The United States Supreme Court has acknowledged that a court's local rules may provide for a means to comply with Fed. R. Civ. P. 11's signature requirement via electronic filing. A court may by local rule permit papers to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes. Thus, the Supreme Court found that local rules on electronic filing provide some assurance, as does a handwritten signature, that the submission is authentic.

### Civil Procedure > Sanctions > Baseless Filings > Signing Requirements

[HN13]M.D.N.C. R. 5.3 permit parties to sign by electronic means documents filed with the court. M.D.N.C. R. 5.3.

### Civil Procedure > Pretrial Matters > Conferences > General Overview

[HN14]Fed. R. Civ. P. 16(b) provides that a schedule may be modified only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). Other courts have emphasized that the "good cause" inquiry focuses on the diligence of the movant seeking to alter a scheduling order.

### Civil Procedure > Summary Judgment > Supporting Materials > General Overview

[HN15]See M.D.N.C. R. 56.1(b).

**COUNSEL:** [*1] For EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff: TINA M. BURNSIDE, LEAD ATTORNEY, U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, CHARLOTTE, NC; JOEL S. ALLEN, MORGAN, LEWIS & BOCKIUS LLP, DALLAS, TX.

For DOLGENCORP, LLC, d/b/a DOLLAR GENERAL, Defendant: JOEL S. ALLEN, MORGAN, LEWIS & BOCKIUS LLP, DALLAS, TX; KATHERINE E. KENNY, MORGAN, LEWIS & BOCKIUS, LLP, PHILADELPHIA, PA; SARAH H. ROANE, OGLETREE DEAKINS NASH SMOAK & STEWART, P.C., GREENSBORO, NC.

**JUDGES:** L. Patrick Auld, United States Magistrate Judge.

**OPINION BY:** L. Patrick Auld

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on three motions filed by Defendant Dolgencorp, LLC ("Defendant"): (A) "Defendant's Motion to Compel Plaintiff's Discovery Responses" (Docket Entry 24); (B) "Defendant's Motion for Extension of Defendant's Deadline to Identify Expert Witnesses and Submit Expert Reports and the Parties' Deadline to Submit Rebuttal Expert Reports" (Docket Entry 38); and (C) "Defendant's Motion for Rule 16(b) Conference, or in the Alternative, Motion to Amend the Existing Scheduling Order" (Docket Entry 55). For the reasons set forth herein, the Court shall order that: (A) Defendant's Motion to Compel (Docket Entry 24) is granted; [*2] (B) Defendant's Motion for Extension of Deadlines Related to Experts (Docket Entry 38) is granted, as modified herein; and (C) Defendant's Motion for a Rule 16(b) Conference, or in the Alternative, Amendment of the Scheduling Order (Docket Entry 55) is granted in part.

**I. BACKGROUND**

The Equal Employment Opportunity Commission ("EEOC") brought this action on behalf of Amanda Tittle Strickland ("A. Strickland"), Maria Kinley Strickland ("M. Strickland") and Tina Baxley ("Baxley," collectively with A. Strickland and M. Strickland, the "Charging Parties"), and other similarly situated female employees of Defendant. (Docket Entry 1 at 1.) The EEOC has alleged that Defendant violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 in that it "subjected [the Charging Parties] and other similarly situated female employees to a sexually hostile work environment because of their sex, female, and constructively discharged M. Strickland because of her sex, female." (Id.) The EEOC has sought compensation for, among other things, "medical expenses" and non-pecuniary losses incurred on behalf of the Charging Parties, "including but not limited to emotional pain, [*3] suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial." (Id. at 7.)

After the EEOC filed its Complaint (Docket Entry 1), and Defendant answered (Docket Entry 4), the parties filed their Rule 26(f) Report which proposed scheduling deadlines for this matter, including the completion of all discovery by July 20, 2010 (Docket Entry 7 at 1-2). [1] The Court, per United States Magistrate Judge Wallace W. Dixon, approved the parties' Rule 26(f) Report (Docket Entry for Dec. 29, 2009) and the Clerk set this case on the Court's April 2011 Master Calendar Term (Docket Entry 11).

> 1 The Joint Rule 26(f) Report also proposed that: the EEOC identify expert witnesses who may be used at trial by May 3, 2010; Defendant identify expert witnesses who may be used at trial by June 3, 2010; the EEOC submit its expert reports to Defendant by May 10, 2010; Defendant submit its expert reports to the EEOC by June 10, 2010; and the parties identify rebuttal expert witnesses and submit rebuttal expert witness reports by July 1, 2010. (Docket Entry 7 at 1-2.)

*Discovery Disputes and Defendant's Instant Motion to Compel*

Defendant [*4] served the EEOC with Defendant's First Set of Interrogatories and Defendant's First Request for Production of Documents. (Docket Entry 24-4 at 2-30.) [2] Defendants posed eighteen interrogatories for response "within thirty (30) days of service" (id. at 6-13), and requested production of 33 categories of documents, "upon service" (id. at 15-25).

> 2 The citation to Defendant's brief in support of

its motion and the exhibits shall refer to the docket number and page number in the Case Management/Electronic Case Filing ("CM/ECF") System footer, because the brief, and the brief's exhibits, were docketed as exhibits to the motion. (See Docket Entry 24-2.)

The interrogatories included the following:

INTERROGATORY NO. 9: Identify any and all consultations, visits and/or treatments by every healthcare provider, doctor, psychologist, psychotherapist, social worker, clergy, therapist and/or counselor with whom each Identified Alleged Similarly Situated Employee consulted at any time to remedy any mental, psychiatric, psychological, emotional and/or physical injury, disease, symptom, condition that she claims she has suffered as a result of the Defendant's conduct forming the basis of this lawsuit. [*5] The information requested includes the date(s) of such treatment, the healthcare providers or counselor's name, address and profession, the physical, emotional or mental condition in respect of which examination or treatment was performed, the diagnosis and treatment provided, whether the Identified Alleged Similarly Situated Employee was instructed to take medication and, if so, the name, dosage and administering regimen of the medication, whether the mental and/or physical injury, disease, symptom, condition or complaint was completely relieved and, if the treatment has ended, the date of the last treatment.

ANSWER:

INTERROGATORY NO. 10: Identify any and all consultations, visits and/or treatments by every healthcare provider, doctor, psychologist, psychotherapist, social worker, clergy, therapist and/or counselor with whom each Identified Alleged Similarly Situated Employee consulted at any time in the last 7 years to remedy any mental, psychiatric,

psychological, emotional and/or physical injury, disease, symptom, condition, complaint or problem similar to, related to or identical to any mental, psychiatric, psychological, emotional and/or physical injury, disease, symptom, condition, [*6] complaint or problem that she claims was caused by the Defendant's conduct forming the basis of this lawsuit. The information requested includes the date(s) of such treatment, the healthcare providers or counselors name, address and profession, the physical, emotional or mental condition in respect of which examination or treatment was performed, the diagnosis and treatment provided, whether each Identified Alleged Similarly Situated Employee was instructed to take medication and, if so, the name, dosage and administering regimen of the medication, whether the mental and/or physical injury, disease, symptom, condition or complaint, if any, was completely relieved and, if the treatment has ended, the date of the last treatment.

ANSWER:

(Id. at 9-10.)

The requests for production of documents included the following:

13. All medical records relating to consultations, visits and/or treatments by every healthcare provider, doctor, psychologist, psychotherapist, social worker, clergy, therapist and/or counselor with whom each Identified Alleged Similarly Situated Employee consulted at any time to remedy any mental, psychiatric, psychological, emotional and/or physical injury, disease, symptom, [*7] condition that she claims she has suffered as a result of the Defendant's conduct forming the basis of this lawsuit. This request specifically includes, without limitation, treatment by any other physician, psychiatrist, psychologist, counselor (including any minister, priest,

or religiously affiliated person), or other healthcare practitioner and all documents pertaining to any counseling, treatment, medication, or diagnosis ordered or made by any such healthcare professional. In addition, please execute and return a copy of the attached Authorization for Disclosure of Protected Health Information for each healthcare provider listed.

14. Any and all medical records relating to consultations, visits and/or treatments by every healthcare provider, doctor, psychologist, psychotherapist, social worker, clergy, therapist and/or counselor with whom each Identified Alleged Similarly Situated Employee consulted at any time in the last seven years to remedy any mental, psychiatric, psychological, emotional and/or physical injury, disease, symptom, condition, complaint or problem similar to, related to or identical to any mental, psychiatric, psychological, emotional and/or physical injury, [*8] disease, symptom, condition, complaint or problem that she claims was caused by the Defendant's conduct forming the basis of this lawsuit. This request specifically includes, without limitation, treatment by any other physician, psychiatrist, psychologist, counselor (including any minister, priest, or religiously affiliated person), or other health care practitioner and all documents pertaining to any counseling, treatment, medication, or diagnosis ordered or made by any such health care professional. In addition, please execute and return a copy of the attached Authorization for Disclosure of Protected Health Information for each healthcare provider listed.

(Id. at 21-22.)

The EEOC responded and prefaced its responses to both Defendant's interrogatories and requests for production with "General Objections" (Docket Entry 25-5 at 3-4, 21-22), followed by more specific responses and objections (id. at 5-18, 23-42). The EEOC gave the following "Answer" to Interrogatory No. 9:

The EEOC objects to Interrogatory No. 9 on the basis that the request is overly broad in scope, burdensome, irrelevant, vague, ambiguous, and beyond the scope of litigation. Such information is not likely to lead to [*9] the discovery of relevant, admissible evidence and calls for production of confidential private personal medical records. Finally the EEOC objects on the basis that the request seeks healthcare records, which are protected under Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.510. Discovery is continuing and the EEOC reserves the right to supplement this interrogatory response if relevant, non-privileged information becomes available.

(Docket Entry 24-5 at 8 (emphasis added).) The "Answer" to Interrogatory No. 10 mirrors the foregoing answer (with the absence of the final sentence). (Id. at 9.) [3] Similarly, the EEOC's "Response[s]" to Request Nos. 13 and 14 repeat the above-quoted answer (with the absence of the final sentence). (Id. at 11-12.) [4]

[3] Seven of the EEOC's "Answer[s]" incorporate some form of the boilerplate objection that "the interrogatory is overly broad in both time and scope, burdensome, irrelevant, vague, ambiguous, and beyond the scope of litigation. Such information is not likely to lead to the discovery of relevant, admissible evidence." (Docket Entry 24-5 at 5-18.)

[4] Twenty-eight of the EEOC's "Response[s]" object using a form of the [*10] boilerplate "overly broad in scope, burdensome, irrelevant, vague, ambiguous, and beyond the scope of litigation" (Docket Entry 24-5 at 21-42), and ten "Response[s]" assert a form of the boilerplate objection that "[s]uch information is not likely to lead to the discovery of relevant admissible evidence" (id.).

On May 19, 2010, Defendant's counsel mailed a letter to the EEOC's counsel stating in pertinent part:

As a threshold matter, Defendant objects to Plaintiff's Responses to Defendant's First Request for Production of Documents on the basis that Plaintiff's Responses frequently use boilerplate objections, which are invalid.

With respect to Interrogatory Nos. 9 and 10 and corresponding Document Request Nos. 13 and 14, Plaintiff's responses are insufficient. In the Prayer for Relief in Plaintiff's Complaint, Plaintiff seeks compensation for pay and future pecuniary losses, including but not limited to "medical expenses," "emotional pain, suffering, inconvenience, lost [sic] of enjoyment of life, humiliation, [and] loss of self-esteem." Therefore, the medical information requested in Interrogatory Nos. 9 and 10 and Document Request Nos. 13 and 14 is relevant to Plaintiff's claims and [*11] the alleged damages sought.

. . . .

Please supplement Plaintiff's responses to Interrogatory Nos. 9 and 10 accordingly, and produce documents responsive to Document Request Nos. 13 and 14. In addition, please execute and return a copy of the attached Authorization for Disclosure of Protected Health Information for each health care provider listed.

(Docket Entry 24-6 at 2 (brackets in original, emphasis added).) On June 11, 2010, the EEOC's counsel sent a letter to Defendant's counsel advising that the EEOC was producing documents responsive to Defendant's document requests, and attached thereto documents and a privilege log. (Docket Entry 37-5 at 2.) [5]

5 The Court refers to the documents attached to the EEOC's response by the CM/ECF docket number and page number incorporated in the footer of each page.

On June 16, 2010, Defendant's counsel sent an e-mail to the EEOC's counsel seeking clarification regarding the medical record authorizations:

[Y]ou've not provided us with any authorizations. What is the basis for withholding those authorizations? I'm certainly entitled to information related to their damages. Are you not seeking back pay or emotional distress?

(Docket Entry 24-7 at 2.) The [*12] next day, the EEOC's counsel answered by way of e-mail:

We will not be providing authorizations. We maintain our objections to those requests. Both Amanda Strickland and Maria Strickliff have seen counselors since suffering harassment at Dollar General. I have received those records directly from the providers and will review and produce them to you if you agree to treat such documents as confidential as provided by the proposed order. Tina Baxley has not sought counseling. We do seek emotional distress damages for all three.

(Id. (emphasis added).) That same day, Defendant's counsel followed up by e-mail:

We will seek to compel production of those documents then. With respect to medical records, I'm entitled to see if there are other possible causes of the emotional distress unrelated to the alleged conduct at DG. If they have medical issues that could have caused or exacerbated the alleged distress, then I would be entitled to see it and don't have to take your word or the word of the charging parties about causation. . . . We offered to do the leg work on all of this by sending your authorizations.

I will agree to treat the documents you produce as confidential. However, consider this [*13] my efforts to conference with you about these issues and your objections. We will move to compel as soon as we can. Moreover, I'm not closing the depositions next week until I've received all documents that I have requested and the court has ruled that I'm entitled to.

(Docket Entry 37-9 at 2 (emphasis added).) According to the EEOC's counsel, "[a]fter receiving Defendant's counsel's assurances that medical records would remain 'confidential for attorney's eyes only' in the absence of a protective order, [the EEOC's counsel] produced various medical records to [Defendant's counsel] by hand on June 21, 2010." (Docket Entry 37-1 at 1.) [6]

> [6] Defendant has asserted that the EEOC "did not supplement its discovery requests and gave no notice of who the medical providers were or what information was in the records" (Docket Entry 24-2 at 5), but this contention, which lacks citation to the record, conflicts with other evidence in the record (see Docket Entry 37-1 at 1).

On June 23, 2010, the parties deposed A. Strickland, who "testified about additional counseling which she had not disclosed previously to the EEOC." (Id.) After the deposition, the EEOC's counsel informed Defendant's counsel that [*14] the EEOC would "obtain such documents and produce them to Defendant." (Docket Entry 37-1 at 1.) [7]

> [7] Defendant has acknowledged that, "[d]uring one of the breaks the morning of the first deposition, the [EEOC] produced limited medical information for each Charging Party" (Docket Entry 24-2 at 5-6), but claims that "the [EEOC] has not produced medical records for this provider . . . ." (id. at 6)

Two days later, Defendant's counsel sent the following e-mail, time stamped 2:13 p.m., [8] to the EEOC's counsel, incorporating a request for "all" the Charging Parties' medical records since they began employment with Defendant in addition to those materials it had sought in its discovery interrogatories and requests:

> I need you to send me the medical authorizations and a list of medical professionals the charging parties saw (at least) from the date they began employment with DG. Since they are all claiming emotional distress damages and have all taken: [REDACTED BY COUNSEL] I think I'm entitled to their medical records for that period of time.

Moreover, Kinley testified she is [REDACTED BY COUNSEL] and [REDACTED BY COUNSEL] I want the records from the medical professional who diagnosed her, all [*15] treatment for those conditions, and all records from the time she began working with DG. This is my last request. If you are not going to produce the records or at least provide me with the information so that I can get them, I will be forced to go [sic] the court.

(Docket Entry 24-9 at 2 (emphasis added).) Later that same day, Defendant's counsel sent the EEOC's counsel another e-mail declaring in relevant part: "I'm going to file a motion to compel and an amendment to our motion to extend the time to designate the experts. I know you will oppose. However, I wanted to run by you how I'm characterizing the information I learned during the depositions." (Docket Entry 37-10 at 3.) By way of e-mail, the EEOC's counsel responded and disclosed that her discovery production was qualified by her determination of "relevan[ce]":

> I haven't even had time to reply to your email of 3:13pm [sic] today (about half an hour ago) threatening a motion to compel before I get [sic] your email below informing me that you are filing such a motion. With respect to Kinley's (Maria Kinley Strickland) testimony about her disorder, not only did she testify about it, the diagnoses [sic] is included in the records [*16] we have provided to you despite the fact that there is not yet a protective order in place. Dr. Steiner is the doctor who diagnosed her condition; you have all of her records. We have provided all of the relevant, responsive medical documents with the exception of documents from the provider Amanda Strickland identified by first name only in her testimony two days ago. I am already working on obtaining those records, as I told you after the deposition that I would, and will provide those to you once I receive them. I do not think a motion to compel is properly filed at this point . . . .

(Id. (emphasis added).)

8    The e-mail signature block for Defendant's counsel identifies his office as located in Dallas, Texas (Docket Entry 24-9 at 2), and the e-mail signature block for the EEOC's counsel identifies her office as located in Charlotte, North Carolina (Docket Entry 37-10 at 3). This Court takes notice that Dallas lies in the Central Time Zone and Charlotte lies in the Eastern Time Zone. The June 25, 2010, 2:13 p.m. e-mail likely reflects Central Standard Time (3:13 p.m., if converted to Eastern Standard Time).

After a July 1, 2010, telephone conference between the parties' attorneys, the [*17] EEOC's counsel sent Defendant's counsel a letter the same day which reads, in relevant part, as follows:

Defendant seeks all medical records for Maria Strickland, Amanda Strickland and Tina Baxley from when they were employed with Dollar General through the present. The [EEOC] has produced relevant, responsive medical documents related to the Charging Parties' claims for emotional distress.

The [EEOC] produced all of Maria Strickland's counselor's records on June 21, 2010, prior to a protective order being entered. Also on June 21, 2010, the [EEOC] produced all counseling records for Amanda Strickland that it was aware of prior to her deposition on June 23, 2010. During her deposition, it became clear that there should be other counseling records. As I [said previously], I will produce those documents once they are in the [EEOC's] possession. As I stated during our conversation, as of today the [EEOC] does not have these documents, but has already undertaken efforts to obtain them. With respect to Tina Baxley, although she never sought counseling, the [EEOC] produced relevant, responsive medical documents related to her claims for emotional distress on June 21, 2010.

(Docket Entry 24-8 [*18] at 2 (emphasis added).) That same day, Defendant's counsel sent an e-mail to the EEOC's counsel stating, in relevant part: "Please let me know as soon as possible about whether you will consent to a telephone conference with the Magistrate to resolve the parties' on-going discovery issues." (Docket Entry 24-3 at 2.) The EEOC's counsel responded: "The [EEOC] does not agree to expedited resolution under LR 37.1(b). It is the [EEOC]'s position that production of medical documents is a serious matter that requires briefing for the Court." (Id.) Additionally, that same day, the EEOC's counsel sent Defendant's counsel a letter producing "supplemental responses to Defendant's first set of discovery requests." (Docket Entry 24-10 at 2.) [9]

9    The EEOC included a supplemental response to Interrogatory No. 9 in which it maintained the same objections, but directed Defendant to specific documents related to each of the Charging Parties. (Docket Entry 24-10 at 5.) The EEOC also supplemented its answer to Interrogatory No. 10 by maintaining the same objections and cross-referencing its answer for Interrogatory No. 9. (Id. at 6.) The EEOC supplemented its response to Request No. 13 by providing a virtually [*19] identical response as the supplemental answer it had provided to Interrogatory No. 9. (Id. at 12.) In its supplemental response to Request No. 14 the EEOC maintained the same objections and added the phrase: "Subject to and without waiving the stated and general objections, EEOC responds as follows: EEOC incorporates its response to Document Request No. 13." (Id. at 13.)

The next day, Defendant filed its motion to compel. (Docket Entry 24.) On July 14, 2010, Defendant filed an "Emergency Motion" which requested the EEOC's time for filing a Response and Defendant's deadline for filing a Reply be truncated to allow Defendant further time to depose A. Strickland and M. Strickland within the discovery period. (Docket Entry 28 at 2-3.) [10] On July 19, 2010, the undersigned United States Magistrate Judge denied the motion and ordered:

[I]n the event the Court grants Defendant's Motion to Compel, the Court will entertain a request by Defendant to extend discovery deadline(s) to allow Defendant to make effective use of any information disclosed as a result of the Court's order.

As a final matter, the Court notes that, since the filing of Defendant's Motion to Compel, additional discovery disputes [*20] apparently have come to a head . . . . In light of the mounting discovery problems in this case, the Court strongly encourages the parties and their counsel to review Kinetic Concepts, Inc. v. ConvaTec Inc., [268] F.R.D. [226], 2010 WL 1912245 (M.D.N.C. 2010). In said decision, the undersigned United States Magistrate Judge set out his understanding of the obligations that the Federal Rules of Civil Procedure and this Court's Local Rules impose upon litigants and their counsel in this context, including the duty to conduct discovery cooperatively, as well as to avoid overbroad requests and/or improper objections.

The parties should re-examine their respective positions now and should consider re-opening a dialogue designed to resolve the pending discovery disputes without court action. If the parties truly cannot reach a mutually-acceptable accommodation regarding these matters, the Court will rule on the pending motions upon completion of briefing. The litigants, however, should know that, if, in deciding such matters, the Court determines that either or both of the parties (and/or their counsel) have failed to meet their obligations regarding the conduct of discovery, the [*21] Court will not hesitate to impose appropriate sanctions.

(Docket Entry 35 at 1-2 (emphasis in first paragraph added, other emphasis in original).)

10 Defendant asserted that it needed further cross-examination because of A. Strickland's disclosure of an additional medical provider and because Defendant agreed to an early conclusion of K. Strickland's deposition to permit her to address a personal issue. (Docket Entry 28 at 2 n. 1.)

On July 20, 2010, the EEOC's counsel sent Defendant's counsel a letter producing supplemental responses to Defendant's discovery requests. (Docket Entry 37-6 at 2.) 11 Two days later, the EEOC's counsel sent Defendant's counsel an e-mail referencing five judicial opinions and claiming:

The cases listed below support the [EEOC's] position that all of [sic] Charging Parties' medical records are not relevant and should not be produced in discovery. The [EEOC] maintains its position that it has produced all relevant responsive medical documents.

(Docket Entry 37-11 at 2 (emphasis added).) The EEOC thereafter responded to the motion to compel (Docket Entry 37) and Defendant submitted a reply (Docket Entry 42).

11 The EEOC supplemented the "Answer" to Interrogatory No. [*22] 9 explaining the treatment received and medications taken by the Charging Parties. (Docket Entry 37-6 at 13-14.) The EEOC also provided a "Response" to supplement Request No. 13, in which it preserved prior objections, directed Defendant to other documents related to A. Strickland and stated: "The EEOC will supplement its response to this document request if additional responsive non-privileged information becomes available." (Docket Entry 37-6 at 5.)

_Extensions of Deadlines_

On June 3, 2010, the parties filed a joint motion for extension of the discovery deadline to August 19, 2010 (Docket Entry 15), 12 which the Court granted on June 7, 2010 (Docket Entry 17). Defendant also moved for an extension of deadlines related to identifying expert witnesses for trial and submitting expert reports. (Docket Entry 16 at 2-3.) 13 In addition, the parties filed a joint motion for an Amended Consent Protective Order. (Docket Entry 20.) The Court granted both motions on June 25, 2010. (Docket Entries 21-22.)

12 The parties asserted that an extension was necessary "[d]ue to the on going exchange of documents" and the scheduling of depositions for the Charging Parties during the week of June 21, 2010. [*23] (Docket Entry 15 at 2.)
13 In that motion, Defendant requested the following deadlines: Defendant identify expert

witnesses by June 30, 2010; Defendant submit expert reports by July 7, 2010; and the parties submit rebuttal expert reports by August 6, 2010. (Docket Entry 16 at 2-3.) Defendant asserted that it needed the extension "to allow [Defendant] to consider the depositions of the [Charging Parties]" which were scheduled for the week of June 21, 2010. (Docket Entry 16 at 2.)

On June 28, 2010, Defendant sought the following additional extensions under the Scheduling Order: Defendant identify expert witnesses by July 28, 2010; Defendant submit expert reports by August 4, 2010; and the parties submit rebuttal expert reports by August 17, 2010. (Docket Entry 23 at 4.) The Court granted said motion. (Docket Entry 34.) The parties jointly moved, on July 23, 2010, to extend the discovery deadline to September 18, 2010 (Docket Entry 36 at 2), and the Court granted that motion on August 2, 2010 (Docket Entry 39).

On July 28, 2010, Defendant filed the pending request for an extension of deadlines related to identifying expert witnesses for trial and submitting expert reports and rebuttal reports. [*24] (Docket Entry 38 at 5.) The EEOC has responded in opposition. (Docket Entry 43.)

_Settlement Negotiations and Breakdown_

On August 26, 2010, the EEOC's counsel reported the case as settled. (Docket Entry from Aug. 26, 2010.) The Clerk then placed an entry on the docket requiring the parties to file a Stipulation of Dismissal by September 27, 2010. (Docket Entry for Aug. 27, 2010.) Through various motions, the parties sought extensions of that deadline up to November 15, 2010, which the Court granted. (See Docket Entries 44-54.) The parties failed to file a proposed consent decree by November 15, 2010, and they did not move for additional extensions of time. (See Docket Entries from Nov. 10, 2010, to Nov. 17, 2010.)

_Motion for Scheduling Conference_

The parties exchanged a variety of e-mails dated November 15, 2010, related to Defendant's motion for a scheduling conference. (See Docket Entry 56-4.) The e-mail exchange began with the EEOC'S counsel asking Defendant's counsel to "send a draft [of the motion requesting a scheduling conference] so we can consider

joining the motion." (Docket Entry 56-4 at 4.) Defendant's counsel directed an e-mail to the EEOC's counsel attaching the "Motion for [*25] Rule 16 (b) Scheduling and Planning Conference, as well as the form Order." (Id. at 3.) In connection with another e-mail, the EEOC's counsel asked: "Why do you think this motion is necessary? Why don't we just talk and come up with proposed dates instead of requesting a hearing and taking up the Court's time?" (Id. at 2.) Defendant's counsel replied, "I assume the court will either want to talk with us or will just tell us to submit dates. I think this is the correct procedure." (Id.) The EEOC's counsel then suggested that the two sides "talk tomorrow and work out the dates ourselves and submit a joint motion with dates for the Court's approval rather than file a motion for hearing." (Id.) In response to that proposition, Defendant's counsel inquired again if the EEOC would "join/oppose/not oppose the motion [seeking a Rule 16(b) Conference]?" (Docket Entry 56-5 at 3.)

The next day, the EEOC's counsel asked: "Are you refusing to talk about proposed dates that we can submit to the Court?" (Id. at 2.) Defendant's counsel responded: "I don't think the court is going to order a hearing. I think if we propose dates alternatively he'll accept them, so why don't you propose some dates." (Id.) [*26] The EEOC's counsel replied by proposing two scheduling deadlines, raising a question about a third deadline, and stating: "Given the Court's clear directive that it wants the parties to avoid going to Court unless necessary, it makes sense for us to talk about dates and submit them jointly to the Court for approval." (Id. at 2 (emphasis added).)

On November 17, 2010, the EEOC's counsel sent an e-mail to Defendant's counsel acknowledging that she understood that Defendant would file the motion, but that the EEOC maintained its opposition because "the schedule for discovery would be most expeditiously resolved by an informal call to the Court to determine the proper time remaining for discovery." (Docket Entry 56-6 at 2.) That same day, Defendant filed its motion for a Rule 16(b) Conference or, alternatively, for an amendment to the scheduling order (Docket Entry 55 at 2), and on December 1, 2010, the EEOC responded (Docket Entry 56).

_Additional Motion Practice_

On December 13, 2010, Defendant moved for the Court to enforce a Confidential Settlement Agreement and Release of Claims as to the Charging Parties. (Docket

Page 10

Entry 57 at 1.) On February 24, 2011, Chief Judge James A. Beaty, Jr. entered [*27] an order denying Defendant's motion to enforce the settlement agreement with respect to the Charging Parties and continuing the trial. (Docket Entry 70 at 5-6.) In his Order, Chief Judge Beaty explained that:

> [T]he Court notes that various discovery matters remain outstanding [Doc. #24, #38, #55], and the discovery deadlines in this case will need to be revised, given the time that has been spent litigating this purported settlement. In addition, to the extent that this case has been set for trial based on those prior deadlines, a continuance of the trial date is necessary in order to allow sufficient time for discovery.

(Docket Entry 70 at 5 (bracket in original).)

## II. DISCUSSION

A. Defendant's Motion to Compel

Defendant's Motion asks this Court to compel the EEOC "to provide full and complete responses to Interrogatories 9 and 10 . . . and Requests 13 and 14 . . . including all medical records of [the Charging Parties], or information sufficient so that Defendant can subpoena the records, since their employment with Defendant" and to award "Defendant reasonable expenses, including attorneys' fees that it incurred in bringing this Motion." (Docket Entry 24 at 1.)

1. The Standard for Motions [*28] to Compel

a. The Scope of Discovery

[HN1]"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Accordingly, under the Federal Rules of Civil Procedure (the "Rules"), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). [14] "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. See also Elkins v. Broome, No.

1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial. At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader.").

> 14 Prior to December 1, 2000, [*29] said provision permitted "discovery regarding any matter, not privileged, which is relevant to the subject matter in the pending action," Fed. R. Civ. P. 26(b)(1) (1993) (emphasis added). The Rules Committee altered this language in response to concerns that, "in some instances, particularly cases involving large quantities of discovery, parties [were] seek[ing] to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action." Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1). In order to secure discovery as to the "subject matter" of an action, a party now must obtain court authorization by showing "good cause." Fed. R. Civ. P. 26(b)(1).

However, [HN2]"[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1). That cross-referenced provision sets out the following limitations:

> [HN3](i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample [*30] opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). See also Nicholas v. Wyndham Int'l Inc., 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that this information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [such discovery] . . . if it concludes that [a limitation in Rule 26(b)(2)(C) applies]."); Fed. R. Civ. P. 26(c)(1) (stating that "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or from undue burden or expense, including . . . forbidding . . . discovery [or] . . . inquiry into certain matters, or limiting the scope of . . . discovery to certain matters").

Notwithstanding [*31] the foregoing limitations, the United States Court of Appeals for the Fourth Circuit has declared that [HN4]"[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (emphasis added). 15 Moreover, the commentary to the Rules indicates that "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1).

15  In so ruling, the Fourth Circuit did not expressly address the 2000 Amendment to Rule 26(b)(1) that narrowed, to some extent, the scope of discovery, see Discussion, supra, n.14; however, the case before said court was filed after that amendment took effect, see Carefirst, 334 F.3d at 395. Accordingly, Carefirst's declaration that the Rules permit discovery "broad in scope" calls into question authority suggesting that the 2000 Amendment significantly narrowed the scope of discovery, see, e.g., Quality Aero Tech., Inc. v. Telemetrie Elektronik, Gmbh, 212 F.R.D. 313, 315 n.2 (E.D.N.C. 2002) [*32] ("The 2000 amendments implicitly seek to farm out the 'fishing expeditions' previously allowed and serve as an attempt to reduce the broad discovery which has heretofore been afforded litigants in civil actions."), and bolsters the view "that the 2000 'amendments do not effect a dramatic change in the scope of discovery,'" Elkins, 2004 WL

3249257, at *2 (internal brackets omitted) (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2008 (Supp. 2003)); see also United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 409 (D. Md. 2005) ("'The present standard - "relevant to the claim or defense of any party" - is still a very broad one.'" (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2008 (Supp. 2004))).

b. The Procedure for Motions to Compel

Despite the unambiguous dictates of the Rules (including Rule 26(g)) and related local rules (like this Court's Local Rule 26.1(b)(1)) that require attorneys to conduct discovery in a cooperative fashion, courts continue to find that "[h]ardball discovery . . . is still a problem in some cases . . . ." Network Computing Servs. Corp. v. Cisco Sys., Inc., 223 F.R.D. 392, 395 (D.S.C. 2004) (noting that such [*33] conduct "is costly to our system and consumes an inordinate amount of judicial resources"). See also Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 656 (D. Md. 1997) ("As with interrogatories, answers to requests for production of documents are also subject to frequent abuse during pretrial discovery."). Accordingly, [HN5]although the Rules provide that the "primary responsibility for conducting discovery . . . rest[s] with the litigants, [who are] obliged to act responsibly and avoid abuse," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g), the Rules also "acknowledge[] the reality that [the discovery process] cannot always operate on a self-regulating basis," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (b).

The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B) (emphasis [*34] added). A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). See also M.D.N.C. R. 37.1(a) ("The court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after

personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. . . . [A]t any party's request, the conference may be held by telephone.").

[HN6]Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See Kinetic Concepts, 268 F.R.D. at 243-44 (citing Wagner v. St. Paul Fire & Marine Ins. Co., 238 F.R.D. 418, 424-25 (N.D.W. Va. 2006); United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005); Elkins, 2004 WL 3249257, at *2 (Dixon, M.J.); Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984); [*35] Flora, 81 F.R.D. at 578 (Gordon, C.J.); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W. Va. 1970); Pressley v. Boehlke, 33 F.R.D. 316, 318 (W.D.N.C. 1963)).

2. Analysis of Defendant's Motion to Compel

a. The Scope of Defendant's Motion to Compel

Defendant's Motion requests that the Court compel the EEOC to "provide full and complete responses to Interrogatories 9 and 10 to Defendant's First Set of Interrogatories and Requests 13 and 14 of Defendant's First Request for Production of Documents, including all medical records of [the Charging Parties], or information sufficient so that Defendant can subpoena the records, since their employment with Defendant . . . ." (Docket Entry 24 at 1 (emphasis added).) [16] The EEOC argues that "Defendant has failed to make a formal discovery request for all medical records which it now seeks . . . ." (Docket Entry 37 at 10.) Defendant responds that, "while it is true that [it] never made a formal discovery request for all medical records of the Charging parties, [its] motion to compel simply requests production of documents [it] did request." (Docket Entry 42 at 3 (emphasis added).)

Interrogatory No. 9 and Request No. 13 both seek medical [*36] information related to treatments, without limitation as to the date of the occurrence, for any ailments that any of the Charging Parties claim they "suffered as a result of the Defendant's conduct forming the basis of the lawsuit." (Docket Entry 24-4 at 8, 21-22.) Interrogatory No. 10 and Request No. 14 both request medical information related to treatments, during the last

seven years, for any ailments suffered by the Charging Parties that are "similar to, related to or identical to any" ailments that the charging Parties' claim "was caused by Defendant's conduct forming the basis of the lawsuit." (Docket Entry 24-4 at 8-9, 22.) Confusion has arisen over whether Defendant's instant Motion to Compel sought discovery beyond that requested in Interrogatory Nos. 9 and 10 and Request Nos. 13 and 14. (See Docket Entry 24 at 1; Docket Entry 37 at 7-11.) More specifically, language in Defendant's instant Motion (quoted above) reasonably caused the EEOC to perceive Defendant as seeking an order compelling production of all the Charging Parties' medical records without regard to any connection between those records and any alleged harm Defendant caused.

> 16   Defendant originally also requested [*37] that the Court compel "Plaintiff to produce executed Authorizations for the Charging Parties' prior employment records . . . ." (Docket Entry 24 at 1.) In its Reply, Defendant acknowledged that, after its filing of the motion, "Plaintiff agreed to produce executed Authorizations for the Charging Parties' prior employment records. Therefore, this request is no longer subject to Defendant's Motion to Compel . . . ." (Docket Entry 42 at 2 n.6.)

In its Reply, Defendant clarified that it did not seek to compel production of information or records beyond that covered by its prior discovery requests and, specifically, that it does not contend that the EEOC must disclose all of the Charging Parties' medical information and records. (See Docket Entry 42 at 1-2 ("[T]he [EEOC] argues that Defendant failed to make a formal discovery request for all medical records of the Charging Parties. While this is true, such a request is not the basis of the motion to compel. The Defendant's motion to compel simply requests medical records related to the injuries the [EEOC] contends the Charging Parties suffered as a result of Defendant's alleged conduct . . . .").)

b. The Parties' Substantive Arguments

The [*38] EEOC asserts that it "produced all documents responsive" to Defendant's requests (Docket Entry 37 at 11), but elsewhere in its brief, it claims that it "produced all relevant responsive documents relating to the Charging Parties' emotional distress including documents pointing to sources of stress other than Defendant" (id. at 19). During the course of discovery, the EEOC has also qualified that its production of

discovery was limited by what its counsel deemed "relevant." (Docket Entry 37-10 at 3 (stating that, with respect to A. Strickland, it had produced all "relevant responsive medical documents" with the exception of certain provider documents); Docket Entry 24-8 at 2 (asserting that the EEOC "has produced relevant, responsive medical documents related to the Charging Parties' claims for emotional distress"); Docket Entry 37-11 at 2 (claiming that the EEOC "maintains its position that it has produced all relevant responsive medical documents" (emphasis omitted)).) The EEOC's response does not clarify what, if any, otherwise responsive documents it has withheld based on its own unilateral relevance determinations. See Kinetic Concepts, 268 F.R.D. at 252 (stating that plaintiffs' [*39] statement that they produced all "relevant" documents left questions about what documents they had withheld).

Defendant counters that "the [EEOC's] unsupported claim that it produced all documents it deemed relevant, is insufficient to refute Defendant's Motion to Compel Plaintiff's Discovery Response." (Docket Entry 42 at 5 (citing Kinetic Concepts, 268 F.R.D. at 248; Jimoh v. Charlotte-Mecklenburg Housing P'ship, Inc., Civil No. 3:08-CV-495-RJC-DCK, 2009 U.S. Dist. LEXIS 113964, 2009 WL 4062881, at *2 (W.D.N.C. Nov. 20, 2009) (unpublished)).) In Kinetic Concepts, the undersigned Magistrate Judge described the problem with the EEOC's qualification as to its response:

> By appending the adjective "relevant" as a qualifier to their otherwise sweeping declaration of compliance with Defendants' requests . . . Plaintiffs' foregoing response confuses more than it clarifies. As another court has observed:

>> This type of answer hides the ball. It leaves the [requesting party] wondering . . . what documents are being withheld. Furthermore, it permits the [responding party] to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are

being [*40] withheld. [The responding party], having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide questions of relevance which is unquestionably the decision of the judge.

>> *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998).

Kinetic Concepts, 268 F.R.D. at 248 (bracket in original). See also id. at 248-49 (citing cases finding that, by withholding documents it deemed irrelevant, respondent made insufficient response); Jimoh, 2009 U.S. Dist. LEXIS 113964, 2009 WL 4062881, at *2 ("Plaintiff . . . merely contends that she has furnished all 'relevant' records. . . .

Plaintiff must fully respond to the Defendant's discovery requests . . . ."). As the party opposing discovery, the EEOC bears the burden of persuading the Court that grounds exist to withhold any documents responsive to the requests at issue. See Kinetic Concepts, 268 F.R.D. at 243-44. The EEOC appears to contend that it could withhold responsive materials because Defendant seeks information which lacks relevance in order to "annoy, embarrass, and humiliate the Charging Parties." (See Docket Entry 37 at 12-16.)

i. Relevance

Defendant argues that it seeks information and records relevant to determining [*41] whether the EEOC's claim for "'medical expenses,' 'emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, [and] loss of self-esteem,'" is attributable to Defendant or "whether other facts affected [the Charging Parties'] mental/emotional/physical health[.]" (Docket Entry 24-2 at 10-12 (first bracket in original) (citing Docket Entry 1 at 7).) The EEOC responds that the requested "medical information and records [] are not relevant to the claims or defenses in this lawsuit." (Docket Entry 37 at 12.)

The Fourth Circuit has affirmed a district court's determination that medical records were subject to discovery where the plaintiff sought damages for mental/emotional damages. Coffin v. Bridges, No. 95-1781, 72 F.3d 126 (decision without opinion), 1995 U.S. App. LEXIS 34729, 1995 WL 729489, at *1, 3-4 (4th Cir. Dec. 11, 1995) (unpublished). Moreover, this Court, per Magistrate Judge Dixon, ruled a charging party's medical records subject to discovery where the plaintiff sought "compensatory damages for 'past and future emotional distress, humiliation, anxiety, inconvenience, and loss of enjoyment of life,'" and concluded that the defendant was "entitled to discover information concerning [*42] [the charging party's] medical, mental, and pharmaceutical history to determine if any prior event may affect his demand for damages." EEOC v. Sheffield Fin. LLC, No. 1:06CV00889, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007) (unpublished). Magistrate Judge Dixon explained that such "'information is further relevant to the preparation of defendant's defenses . . ., because [the plaintiff's] medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being.'" Id. (quoting LeFave v. Symbios, Inc., No. CIV.A. 99-Z1217, 2000 U.S. Dist. LEXIS 22278, 2000 WL 1644154, at *2 (D. Colo. Apr. 12 2000) (unpublished)). [17]

17 The EEOC characterizes Sheffield as follows:

[T]he court appears to hold that whenever a plaintiff alleges emotional distress as part of a Title VII lawsuit, a defendant is *automatically* entitled to broad discovery of information pertaining to the plaintiff's medical records (regardless how remote or unlikely to yield relevant information) in order to determine if there is any contributing source of plaintiff's emotional distress.

*Sheffield Financial, LLC*, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560 at *4.

(Docket Entry 37 at 17 (italics in original, underlined emphasis added).) The [*43] EEOC ignores Magistrate Judge Dixon's discussion of the permissible scope of discovery under Rule 26 of the Federal Rules of Civil Procedure, see Sheffield, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *3. Moreover, in Sheffield, the defendant's motion to compel related to three interrogatories and three requests for production of which two interrogatories and two requests for production limited the discovery sought by time, and the remaining interrogatory and request for production limited the discovery sought by the type of treatment received. 2007 U.S. Dist. LEXIS 43070, [WL] at *1-2.

Other decisions from courts in the Fourth Circuit are consistent with Sheffield. See, e.g., EEOC v. Smith Bros. Truck Garage, Inc., No. 7:09-CV-00150-H, 2011 U.S. Dist. LEXIS 2774, 2011 WL 102724, at *1-2, 4 (E.D.N.C. Jan. 11, 2011) (unpublished) (finding that, where plaintiff sought compensation on behalf of charging party for emotional distress, inconvenience, loss of enjoyment of life, humiliation, and loss of self-esteem, defendant had right to explore charging party's medical records for other causes of emotional distress damages) (citing Sheffield, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *4); Carr v. Double T Diner, Civil Action No. WMN-10-CV-00230, 2010 U.S. Dist. LEXIS 93001, 2010 WL 3522428, at *1-3 (D. Md. Sept. 8, 2010) [*44] (unpublished) (granting defendant's motion to compel discovery of plaintiff's medical records related to her mental health where plaintiff placed mental health at issue by seeking damages grounded in emotional distress); Jimoh, 2009 U.S. Dist. LEXIS 113964, 2009 WL 4062881, at *1 (finding that plaintiff's medical records were subject to discovery where she claimed compensatory damages for emotional distress, pain and suffering, and mental anguish thus placing her mental condition at issue) (citing Coffin, 1995 U.S. App. LEXIS 34729, 1995 WL 729489, at *3, and Sheffield, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *4); Teague v. Target Corp., No. 3:06CV191, 2006 U.S. Dist. LEXIS 89945, 2006 WL 3690642, at *1-2 (W.D.N.C. Dec. 11, 2006) (unpublished) (granting defendant's motion to compel discovery regarding plaintiff's health care treatment along with medical records where plaintiff sought compensatory damages for emotional distress). [18]

18 Defendant has also cited Butler v. Burroughs Wellcome, Inc., 920 F. Supp. 90, 91 (E.D.N.C. 1996) (Docket Entry 42 at 8), which is distinguishable on its facts in that the employee brought an action against her former employer

under the Americans with Disabilities Act and the court held that the plaintiff's medical history is "relevant in its entirety[,]" because [*45] the action arose under that statute, Butler, 920 F. Supp. at 92. The Court acknowledges that Jimoh relied on Butler, however, Jimoh remains persuasive authority in that the court also cited Coffin, Sheffield and Teague. See Jimoh, 2009 U.S. Dist. LEXIS 113964, 2009 WL 4062881, at *1.

The EEOC asserts that "Defendant cannot escape liability for compensatory damages simply because there may have been other sources of emotional distress" (Docket Entry 37 at 16-17 (citing Lockwood v. McCaskill, 262 N.C. 663, 670, 138 S.E.2d 541, 546-47, (1964))). More specifically, the EEOC cites Lockwood for the proposition that a "tort-feasor is liable . . . for all of the consequences which are the natural and direct result of his conduct," Lockwood, 262 N.C. at 670, 138 S.E.2d at 546-47. (Id.) Defendant, however, seeks the medical information to determine "whether other facts affected [the Charging Parties'] mental/ emotional/physical health" (Docket Entry 24-2 at 12), such that a reasonable fact-finder might determine that those other circumstances, not Defendant's conduct, caused the harm attributed to Defendant by the EEOC. Given the broad scope of federal discovery, see Carefirst, 334 F.3d at 402, Magistrate Judge Dixon properly [*46] determined that the discovery rules permit an inquiry into such matters, see Sheffield, 2007 U.S. Dist. LEXIS 43070, 2007 WL 1726560, at *4.

In attempting to avoid this conclusion, the EEOC argues that "several courts have applied Rule 26 to forbid automatic discovery of a plaintiff's medical records in cases involving emotional distress claims." (Docket Entry 37 at 12-13 (citing Fields v. West Virginia State Police, 264 F.R.D. 260, 263 (S.D.W. Va. 2010); EEOC v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 123 (W.D.N.Y. 2009); Manessis v. New York City Dep't of Transp., No. 02 CIV. 35SASDF, 2002 U.S. Dist. LEXIS 17884, 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (unpublished)).) Moreover, the EEOC claims that, "[c]ourts across multiple jurisdictions have denied the discovery of a plaintiff's medical records in Title VII cases where such information was not relevant or had minimal value." (2002 U.S. Dist. LEXIS 17884, [WL] at 13 (citing Walker v. Northwest Airlines Corp., No. Civ.00-2604 MJD/JGL, 2002 U.S. Dist. LEXIS 27592,

2002 WL 32539635, at *5 (D. Minn. Oct. 28, 2002) (unpublished); Fritsch v. City of Chula Vista, 187 F.R.D. 614, 634 (S.D. Cal. 1999), modified, Doe v. City of Chula Vista, 196 F.R.D. 562 (S.D. Cal. 1999); Bottomly v. Leucadia Nat'l, 163 F.R.D. 617, 619 (D. Utah 1995)).) Neither [*47] the EEOC's arguments in this regard nor the authority it has cited can sustain the position the EEOC has taken in this case.

First, although [HN7]the Court should deny Defendant's motion to compel if "the burden . . . of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C), and/or if "good cause" exists to believe that the discovery would result in unwarranted "annoyance, embarrassment, [or] oppression," Fed. R. Civ. P. 26(c)(1), the EEOC has not shown that such circumstances exist in this case. [19] Second, the cases cited by the EEOC do not establish that the information and records sought by Defendant lack relevance. Indeed, Defendant contends that "many of the cases cited by the [EEOC] actually support Defendant's argument" (Docket Entry 42 at 8); based on its independent review of the cited authority, the Court agrees. See Fields, 264 F.R.D. at 264 ("If a plaintiff has placed his or her mental or physical health in issue, then any records in the plaintiff's possession relating to that issue should be produced. . . . A party should promptly and without objection answer questions regarding health issues which that party places in issue." (emphasis added)); [20] [*48] Nichols Gas & Oil, 256 F.R.D. at 123 (permitting defendants to examine any medical records of claimants where summaries reflected treatment for emotional distress "regardless of the cause" or medical conditions which could have resulted in the "same type of physical symptoms that claimants have described"); Manessis, 2002 U.S. Dist. LEXIS 17884, 2002 WL 31115032, at *2 (ruling that defendants could obtain plaintiff's medical records, including for ailments that caused plaintiff emotional distress during relevant time period); Bottomly, 163 F.R.D. at 621 (recognizing that medical "treatment of plaintiff [that] occurred prior to the incident [to which plaintiff attributed emotional distress] may have some relevance on causation").

19  In this regard, the Court notes that the EEOC has not identified anything particularly sensitive about any portion of the medical information or records it seeks to keep from Defendant.

20  In Fields, the Magistrate Judge considered the specific issue "of whether a federal judicial officer

can order a party . . . to execute HIPAA-compliant medical releases . . . ." Fields, 264 F.R.D. at 260 (internal footnote omitted). Defendant's discovery requests solicited medical records releases (Docket [*49] Entry 24-4 at 22) and its motion to compel seeks an order directing the EEOC to provide such releases (Docket Entry 24 at 1). The EEOC, however, has not developed any argument against Defendant's request for such releases, apart from the EEOC's more general position that Defendant's discovery requests fail for lack of relevance and improper purpose. (Docket Entry 37 at 11-18.) In other words, the EEOC has not raised the specific issue addressed in Fields. The EEOC's mere citation to the holding in Fields (Docket Entry 37 at 12) did not sufficiently present the matter at issue in Fields for determination by this Court. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way . . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 U.S. Dist. LEXIS 67355, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [Plaintiff] failed to develop these arguments in his Brief, the court will not address them.").

Finally, Defendant has pointed to specific information and records [*50] that appear responsive to its discovery requests that the EEOC refuses to disclose based on an unreasonably cramped view of relevance at the discovery stage (given the Fourth Circuit's clear statement about the broad scope of discovery). (See Docket Entry 42 at 6.) More specifically, Defendant has developed evidence in discovery that two of the Charging Parties had car accidents that resulted in significant medical treatment during the period in which they have alleged Defendant's conduct caused them medical expenses and emotional suffering. (Id.) Nonetheless, despite Defendant's request for information and records regarding treatment for problems "related to" the problems the Charging Parties attribute to Defendant's conduct, the EEOC has refused to produce any information or records for this other prior treatment that could bear on the issue of causation as to the alleged damages. The EEOC has not carried its burden of showing that such information and records lack relevance

at the discovery stage.

ii. Improper Purpose

Defendant also argues that "Defendant's dogged pursuit of information about [sic] Charging Parties' medical history . . . amounts to nothing more than a 'fishing expedition.' [*51] Defendant's 'scorched earth' discovery approach serves no purpose other than to annoy, embarrass, and humiliate the Charging Parties." (Docket Entry 37 at 16.) More specifically, the EEOC claims that Defendant seeks to "annoy, embarrass, and humiliate the Charging Parties" in that Defendant had previously served the Charging Parties with a subpoena which requested the same information as the pending motion. (Docket Entry 37 at 16 n.7.) The EEOC's argument in this regard lacks any citation of authority and the Court declines to draw any adverse inference regarding Defendant's purpose in seeking the information in question based on its prior service of a subpoena. The EEOC has not met its burden of establishing that Defendant made the requests in Interrogatory Nos. 9 and 10 and Request Nos. 13 and 14 for an improper purpose.

c. Brief Conclusion

The EEOC has not carried its burden of showing that Defendant's instant discovery requests seek irrelevant material or that Defendant made the requests for an improper purpose. In addition, Defendant has shown that the EEOC's litigation posture (including in its briefing as to the instant motion) indicates that the EEOC has withheld documents responsive [*52] to defendant's discovery requests based on the EEOC's unilateral relevance determinations. Further, Defendant has identified specific records that fall within the scope of Defendant's discovery requests that the EEOC has refused to provide. Finally, the EEOC's Response does not offer any arguments to support any of the other boilerplate objections asserted in its "Answer[s]" to Defendant's interrogatories or "Response[s]" to document requests.

Accordingly, the Court will grant Defendant's motion as it relates to Interrogatory Nos. 9 and 10 and Request Nos. 13 and 14. Within seven days of the date of this Memorandum Opinion and Order, the EEOC shall supplement its responses to Interrogatory Nos. 9 and 10 and its production as to Request Nos. 13 and 14, to provide all responsive information and documents.

### 3. Defendant's Request for its Expenses

Defendant requests that the Court award Defendant "reasonable expenses, including attorneys' fees that it incurred in bringing this Motion." (Docket Entry 24-2 at 14.) In its Response, the EEOC asks that the Court "deny Defendant's request for costs and attorney's fees." (Docket Entry 37 at 20.)

[HN8]In addition to establishing a process for judicial resolution [*53] of discovery disputes, "Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery." Fed. R. Civ. P. 37 advisory committee's notes, 1970 Amendment. More specifically:

> [HN9]If the motion is granted - or if the disclosure or requested discovery is provided after the motion was filed - the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

[HN10]The Fourth Circuit has explained that "[a] legal position is 'substantially justified' if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in [*54] law and fact.'" Decision Insights, Inc. v. Sentia Group, Inc., 311 Fed. Appx. 586, 599 (4th Cir. 2009) (citing Pierce v. Underwood, 487 U.S. 552, 565-66 n.2, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)). The burden to "show that its failure to comply

was either substantially justified or harmless" is borne by the party facing sanctions under Rule 37. Carr v. Deeds, 453 F.3d 593, 602 (4th Cir. 2006).

Because the Court has granted Defendant's motion to compel, the Court must order the EEOC to pay Defendant's reasonable costs, including attorney's fees, unless one of the exceptions under Rule 37(a)(5)(A) applies. The EEOC argues that the Court should not order payment of costs because the EEOC's position "'was substantially justified.'" (Docket Entry 37 at 18 (quoting Fed. R. Civ. P. 37(a)(5)(A)(ii)).)

In making this argument, the EEOC focuses primarily on the fact that it cited case law in support of its opposition to Defendant's Motion to Compel. (See id. at 19-20.) For reasons previously discussed, the case law on which the EEOC relied did not substantially justify its refusal to provide discovery as to treatment in the last seven years for conditions that - under the liberal view of relevance applicable at the discovery [*55] stage - could be related to problems the Charging Parties now attribute to Defendant's conduct. Nor did the case law support the notion that the EEOC could withhold information and documents otherwise responsive to discovery requests based on its unilateral determination of relevance, particularly without clarifying for Defendant and the Court exactly what information or records the EEOC failed to disclose on such a basis. Finally, the case law cited by the EEOC did not justify the assertion of boilerplate objections to discovery requests.

However, the Court concludes that portions of Defendant's initial arguments in support of its motion to compel created confusion about whether Defendant sought "all" of the Charging Parties' medical records. The EEOC's Response and Defendant's Reply thus both had to address this issue and, as a result, awarding Defendant all its costs related to its Motion to Compel would be "unjust," Fed. R. Civ. P. 37(a)(5)(A)(iii). Accordingly, the Court will order the EEOC to pay half of Defendant's reasonable costs, including attorney's fees.

### B. Motion to Extend Deadlines Related to Experts

Defendant has moved to extend the deadlines related to: (A) Defendant's [*56] identification of expert witnesses who will be used at trial (Docket Entry 38, ¶ 10); (B) Defendant's submission of expert reports from retained experts (id.); and (C) Plaintiff's submission of rebuttal expert reports (id., ¶ 11). In opposition, the

EEOC makes one argument based upon Defendant's compliance with the filing Rule and three arguments directed to the motion's merits. (Docket Entry 43 at 3-4.)

## 1. The EEOC's Procedural Argument

The EEOC argues that Defendant's instant motion "was not signed in compliance with the [Rules]" (Docket Entry 43 at 3). Rule 11, the source of the signature requirement, provides, in pertinent part:

> [HN11](a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name -- or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

Fed. R. Civ. P. 11(a) (emphasis [*57] added). [HN12]The United States Supreme Court has acknowledged that a court's local rules may provide for a means to comply with Rule 11's signature requirement via electronic filing. Becker v. Montgomery, 532 U.S. 757, 764, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001). The Becker Court noted that a "'court may by local rule permit papers to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes.'" Id. at 764 (quoting Fed. R. Civ. P. 5(d)(3)). Thus, the Supreme Court found that "local rules on electronic filing provide some assurance, as does a handwritten signature, that the submission is authentic." Id.

[HN13]This Court's Local Rules permit parties to sign by electronic means documents filed with the Court. M.D.N.C. R. 5.3 ("Documents may be filed, signed and verified by electronic means to the extent and manner authorized by the court's Standing Order regarding Electronic Case Administrative Polices and Procedures and the ECF User Manual."). This Court's Standing Order No. 34 (dated January 26, 2005, and effective March 1, 2005), directs that the "electronic filing of complaints,

petitions, pleadings, motions, or other documents [*58] by an attorney who is a registered participant in the Electronic Case Filing System shall constitute the signature of that attorney under Federal Rule of Civil Procedure 11." The Court's Case Management/Electronic Case Filing ("CM/ECF") User's Manual explains that registered participants may use the CM/ECF System to perform certain functions including, among other things, to "[e]lectronically file pleadings and documents in actual ('live') cases." Electronic Case Filing CM/ECF User's Manual (U.S. District Court for the Middle District of North Carolina 2007), available at www.ncmd.uscourts.gov/cmecf, at 3.

Defendant's motion contains a page reflecting its submission by two of Defendant's counsel, Ms. Sarah H. Roane and Mr. Joel S. Allen, in that a signature block appears for each attorney. (Docket Entry 38 at 5.) Above each attorney's signature block the page contains a line which has a "s/" without any attorney name following. (See id.) The docket reflects that Ms. Roane filed this motion in the CM/ECF System. (See Docket Entry for July 28, 2010.) The EEOC does not assert that Ms. Roane fails to qualify as a "registered participant" in the Court's CM/ECF system. (See Docket Entry 43 [*59] at 3.) In the absence of such a showing, under this Court's Local Rules (which incorporate the applicable Standing Order), Ms. Roane's filing of the document via the CM/ECF system "constitute[s] the signature of that attorney under Federal Rule of Civil Procedure 11," M.D.N.C. Standing Order No. 34.

## 2. The EEOC's Substantive Arguments

Defendant requests an "extension of its deadline to identify expert witnesses and submit expert reports, so that [it] may have time to consider responsive documents and information not yet produced by [the EEOC]." (Docket Entry 38 at 4.) The EEOC argues that: (1) it has "produced all medical records reflecting or relating to emotional distress and treatment and medications prescribed for such" (Docket Entry 43 at 3); (2) "Defendant has had ample opportunity to determine if it needs expert witnesses in this case" (id.); and (3) "[i]t is unlikely that Defendant will gain any additional information implicating the need for expert testimony even if it is successful in obtaining additional medical documents through its pending Motion to Compel . . ." (id. at 3-4).

[HN14]Rule 16(b) provides that a "schedule may be

modified only for good cause and [*60] with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). Other courts in this Circuit have emphasized that the "good cause" inquiry focuses on the diligence of the movant seeking to alter a scheduling order. See George v. Duke Energy Retirement Cash Balance Plan, 560 F. Supp. 2d 444, 480 (D.S.C. 2008) ("'Good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."); Marcum v. Zimmer, 163 F.R.D. 250, 255 (S.D.W. Va. 1995) ("[T]he touchstone of 'good cause' under Rule 16(b) is diligence."). See also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

As of the filing of the instant motion on July 28 2010, the relevant deadlines required: Defendant to identify trial experts by July 28, 2010; Defendant to submit expert reports by August 4, 2010; and the EEOC to submit rebuttal expert reports by August 17, 2010. (Docket Entry 34.) The EEOC's withholding of discovery has, at least in part, impeded Defendant's ability to meet those deadlines. Prior to [*61] the deadlines, Defendant moved to compel the EEOC to produce that discovery (Docket Entry 23 at 3; see Docket Entry 24), and the Court now has granted that motion. These circumstances reflect that Defendant acted diligently. Good cause thus exists to grant Defendant's motion.

Defendant proposed new dates for completion of the expert-related disclosures (Docket Entry 38 at 5), but those dates have now passed. Nevertheless, the number of days for which Defendant sought an extension (i.e., the difference between the filing date of the motion and the proposed deadlines) are as follows: a 30-day extension to identify expert witnesses; a 37-day extension for submitting expert reports; and a 50-day extension for submission of rebuttal expert reports (id.). The Court finds that time frame reasonable and will set deadlines consistent with it.

C. Motion for Rule 16(b) Conference/Amendment of Schedule

Defendant has filed an additional motion for a Rule 16(b) Conference or, in the alternative, further amendment of the existing Scheduling Order. (Docket Entry 55 at 1.) Said Motion arises from the fact that discovery was suspended when, on August 26, 2010, the

EEOC reported to the Court that the parties [*62] had reached an oral settlement. (Docket Entry 55 at 1-2.) Defendant requests that the Court set new deadlines for: (A) discovery; (B) Defendant's identification of expert witnesses; (C) Defendant's submission of expert reports; (D) the EEOC's submission of rebuttal expert reports; (E) the parties' submission of dispositive motions; and (F) the trial date. The EEOC agrees that the Court should extend the discovery period, but disagrees with the length of the extension proposed by Defendant. (See Docket Entry 56 at 3-4.) Additionally the EEOC opposes any deadline extensions related to expert witnesses. (Docket Entry 56 at 4 (citing Docket Entry 43).)

As an initial matter, Defendant requests that the Court provide the parties with 45 days to complete all discovery. (Docket Entry 55 at 2.) The EEOC responds that discovery should be limited to a 23-day period, because when, "on August 26, 2010, counsel for Defendant requested that discovery be put 'on hold[,]'" the discovery deadline was September 18, 2010, leaving 23 days for discovery. (Docket Entry 56 at 3.) Because the Court has ordered additional production from the EEOC and because it may take some additional time for the parties to [*63] ramp discovery back up, the Court finds Defendant's proposed extension reasonable.

Defendant also moves that the Court revise three dates related to experts. (Docket Entry 55 at 2.) Defendant's proposal in this regard differs slightly from that discussed in connection with the prior motion. (See id.) Defendant does not explain any rationale for these differences and, therefore, the Court will adopt a time line that generally mirrors Defendant's initial proposal.

Next, Defendant calls for the Court to set the deadline for submission of dispositive motions at 30 days from the close of discovery. (Docket Entry 55 at 2.) The Court's Local Rules provide that [HN15]"[a]ll dispositive motions and supporting briefs must be filed and served within 30 days following the close of the discovery period." M.D.N.C. R. 56.1(b). Because Defendant's request coheres with that Local Rule, the Court will grant it. Finally, the Clerk will set the trial date, based on the other adjustments to the Scheduling Order that the Court now has made.

IV. CONCLUSION

The Court will grant Defendant's Motion to Compel (Docket Entry 24). Furthermore, good cause exists to

modify the Scheduling Order and thus the Court will make [*64] adjustments to various case management deadlines consistent with the requests in Defendant's Motion for Extension of Deadlines Related to Experts (Docket Entry 38) and some of the requests in Defendant's Motion for a Rule 16(b) Conference, or in the Alternative, Amendment of the Scheduling Order (Docket Entry 55).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (Docket Entry 24) is **GRANTED.** On or before April 7, 2011, the EEOC shall supplement its "Answer[s]" to Interrogatory Nos. 9 and 10 and its production as to Request Nos. 13 and 14, to provide all responsive information and documents.

**IT IS FURTHER ORDERED** that, on or before April 7, 2011, Defendant shall provide the EEOC an itemized listing of Defendant's reasonable costs, including attorney's fees, incurred in connection with the filing of Defendant's instant Motion to Compel. If the EEOC contests the reasonableness of those costs, the parties shall attempt to resolve any differences and, on or before April 21, 2011, shall submit their joint or respective positions regarding Defendant's cost accounting to the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for Extension of Deadlines Related to Experts (Docket Entry [*65] 38) is **GRANTED**, with these modifications: Defendant's deadline to identify expert witnesses for use at trial is May 2, 2011; Defendant's deadline for submitting expert reports from retained experts is May 9, 2011; and the EEOC's deadline for submitting rebuttal expert reports is May 31, 2011.

**IT IS FURTHER ORDERED** that Defendant's Motion for a Rule 16(b) Conference, or in the Alternative, Amendment of the Scheduling Order (Docket Entry 55) is **GRANTED IN PART** in that the deadline for the completion of all discovery is extended to June 15, 2011, which results in a deadline of July 15, 2011, for the filing of dispositive motions.

March 31, 2011

/s/ L. Patrick Auld

**L. Patrick Auld**

**United States Magistrate Judge**