UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 11-cv-570

| | |
|---|---|
| RASHARD MENDENHALL,<br><br>Plaintiff,<br><br>v.<br><br>HANESBRANDS INC.<br><br>Defendant. | **DECLARATION OF VICTORIA L. LOUGHERY IN SUPPORT OF HANESBRANDS INC'S OPPOSITION TO PLAINTIFF RASHARD MENDENHALL'S MOTION TO COMPEL DISCOVERY** |

I, Victoria L. Loughery, declare:

1. I am an attorney licensed to practice law before all courts in the State of New York and the United States Federal Court, Southern and Eastern Districts of New York; I am admitted *pro hac vice* in the above-captioned matter. I am an associate at Proskauer Rose, LLP, attorneys for Defendant-Hanesbrands, Inc. ("Hanesbrands"). I submit this declaration in support of Hanesbrands' Opposition to Plaintiff's Motion to Compel. The facts set forth herein are of my own personal knowledge.

2. In May 2008, the Parties entered into a Talent Agreement (the "Talent Agreement"), whereby Plaintiff agreed to advertise and promote, and to allow Hanesbrands to use his name and likeness to advertise and promote, CHAMPION ® products, in exchange for a compensation package to be paid by Hanesbrands. *See* Dkt. 1 (Complaint, Ex. A at 2-3 and B at 1-3.) The Talent Agreement was amended on or about August 31, 2012, with an effective date of May 1, 2011. *See Id*. Ex. B (the "Extension Agreement").

3. Paragraph 17 of the Talent Agreement, entitled "Mendenhall's Reputation/Statement & Acts" (the "Morals Clause"), gave Hanesbrands the right to terminate the Talent Agreement in the event that Plaintiff engaged in conduct that could reflect negatively on the CHAMPION ® brand (or its parent company, Hanesbrands). The Morals Clause, as specifically amended by the Extension Agreement, gave Hanesbrands an immediate right to terminate the Agreement if Plaintiff became " involved in any situation or occurrence…tending to bring Mendenhall into public disrepute, contempt, scandal, or ridicule, or tending to shock, insult, or offend the majority of the consuming public or any protected class or group thereof…." *Id*. at 4. The

1

Morals Clause expressly stated that "HBI's decision on all matters arising under this Section 17(a) shall be conclusive." *Id.*

4. On May 2, 2011 Plaintiff posted a number of comments to his Twitter feed which 1) criticized persons who were perceived to be "celebrating" the news of Osama bin Laden's death, and 2) suggested that the September 11, 2011 attacks on the Twin Towers and the Pentagon were perpetrated by the United States government, rather than by Osama bin Laden and al Qaeda terrorists (the "May 2nd Tweets"). *See* Dkt. 1 ¶ 35. Plaintiff's statements resulted in almost instantaneous negative public reaction. On May 4, 2011, Plaintiff posted a blog entry entitled "Clarification," which drew further negative attention to Plaintiff and his statements. *See Id.* at ¶ 36. Hanesbrands thereafter exercised its contractual right under the Morals Clause to terminate Plaintiff on May 5, 2011. *See Id.* at Ex. C.

5. On July 18, 2011 Plaintiff filed this suit alleging that Hanesbrands' termination of Plaintiff constituted a breach of the Talent Agreement. Hanesbrands answered Plaintiff's complaints on August 3, 2011 (*see* Dkt. 10), and simultaneously filed a motion for a judgment on the pleadings (*see* Dkt. 11). On April 12, 2012 the Court denied HBI's motion (*see* Dkt. 18), and discovery commenced on May 31, 2012 with the Court's entry of the parties' proposed scheduling order. (*See* May 31, 2012 Text Order).

6. Hanesbrands served Plaintiff with its first set of interrogatories and document requests on May 31, 2012 and Plaintiff served written responses and objections on August 6, 2012. That same date, Plaintiff also made a production of documents. A true and correct copy of Plaintiff's written responses and objections are attached hereto as **Exhibit 12**.

7. Plaintiff served his first set of interrogatories and document requests on Hanesbrands on June 1, 2012.

8. On August 7, 2012 Hanesbrands served its written responses and objections to Plaintiff's discovery requests, along with a small initial production of twenty four pages of documents that were not confidential. In its responses and objections, Hanesbrands stated that to the extent that Plaintiff's requests called for confidential documents, Hanesbrands would require the entry of an appropriate protective order. A true and correct copy of Hanesbrands' Responses and Objections to Plaintiff's First Set of Document Requests is attached hereto as **Exhibit 1**.

9. Hanesbrands sent Plaintiff a proposed protective order on August 23, 2012. A true and correct copy of Hanesbrands' August 23, 2012 e-mail is attached as **Exhibit 2**. That protective order was entered by the court on September 10, 2012 (Dkt. 25) and Hanesbrands served an additional production of over 3,000 documents (approximately 8,800 pages) on September 19, 2012. A true and correct copy of Hanesbrands' September 19, 2012 document production letter is attached hereto as **Exhibit 3**.

10. On August 23, 2012 Plaintiff's counsel sent Hanesbrands a letter raising several concerns with respect to Hanesbrands' discovery responses. On September 7, 2012 counsel for Hanesbrands sent Plaintiff a letter concerning a number of apparent deficiencies in Plaintiff's document production. A true and correct copy of Hanesbrands' September 7, 2012 deficiency letter is attached hereto as **Exhibit 4**.

11. On September 10, 2011, I met and conferred with Plaintiff's counsel via telephone, in an attempt to resolve or narrow the parties' disputed issues. Thereafter, Plaintiff's counsel sent a "confirmatory" email purporting to summarize the parties' positions with respect to the issues discussed, but which did not appear to correctly characterize Hanesbrands' position. Accordingly, that same day, Hanesbrands responded to Plaintiff's email, in an attempt to clarify the issues. A true and correct copy of

3

Plaintiff's "confirmatory" email and Hanesbrands' response is attached hereto as **Exhibit 5**.

12.     The parties subsequently exchanged additional correspondence in an attempt to further clarify and resolve the issues.  A true and correct copy of the parties' e-mail correspondence on September 10, 2012, September 11, 2012, September 12, 2012 and September 13, 2012 is attached hereto as **Exhibits 6, 7, 8, 9, and 10**.

13.     With regard to Plaintiff's objections to the sufficiency of Hanesbrands' interrogatory answers, counsel for Hanesbrands:  1) agreed to review Hanesbrands' response to Interrogatory No. 1 and identify any additional persons who may have been "involved in" or "consulted" concerning the termination decision; 2) review its responses to Interrogatory No. 2 and see if it could identify with specificity any additional responsive facts, documents, or communications; 3) identify, by Bates number, documents supporting Hanesbrands' answers to Interrogatory Nos. 3-8; 4) review Hanesbrands' response to Interrogatory No. 9 to see if Hanesbrands could identify with specificity any additional facts or documents; and 5) identify the specific date on which Hanesbrands' decision to terminate the Talent Agreement was made. *See* Ex. 8.

14.     With regard to Plaintiff's issues concerning Hanesbrands' responses and objections to Plaintiff's document requests, Hanesbrands' counsel: 1) confirmed that, where it had agreed to produce "responsive, non-privileged documents," to a particular request, that it would, subject to and without waiving any of its previous objections, produce all such responsive, non-privileged documents; 2) agreed to produce documents in response to Requests Nos. 12 and 37 (to which it had previously objection to in their entirety); and 3) agreed to provide a privilege log for any documents withheld on that basis. *Id*.

4

15. With regard to Plaintiff's requests for documents pertaining to other Hanesbrands endorsers, I informed Plaintiff's counsel that it was Hanesbrands' position that such documents were irrelevant. Plaintiff's counsel informed me that Plaintiff believed such documents were relevant to the extent that Hanesbrands may have treated prior similarly situated endorsers differently, but conceded that such documents would be irrelevant if the endorsers were not similarly situated to Plaintiff. In light of this exchange, Hanesbrands agreed to produce an appropriately redacted copy of any endorsement agreement which Hanesbrands had terminated for violation of such agreement's morals clause. *Id*.

16. Although Hanesbrands agreed to the majority of Plaintiff's requests, on September 11, 2012, Plaintiff nonetheless threatened to file a motion to compel if Hanesbrands did not agree to withdraw all of its objections to Plaintiff's interrogatories and documents requests, and make an immediate, overnight production of all responsive documents. *See* Ex. 7.

17. On September 12, 2012, Hanesbrands informed Plaintiff that Hanesbrands would not be able to comply with that demand, but stated that Plaintiff's threat to file a motion to compel was premature in light of the fact that Hanesbrands would be able to serve a large supplemental production of documents the following week. *See* Ex. 8. Hanesbrands also pointed out that Plaintiff himself had numerous document production deficiencies that still needed to be resolved. *Id.*

18. On September 12, 2012 at 11:05 pm (well after the close of business), Plaintiff's counsel informed Hanesbrands that Plaintiff was not satisfied with Hanesbrands' response and intended to file a motion to compel concerning the aforementioned issues. Plaintiff's late-night email also included a number of *new* requests, including that Hanesbrands: 1) agree to shorten the briefing schedule concerning the motion to compel;

5

2) agree to a phone call with the Court to resolve the issues on the motion to compel; 3) agree to produce all documents before October 1st or to push back the parties' October 16th mediation; and 4) agree to a four month extension of the fact discovery deadline, from November 30, 2012 to March 8, 2013. *See* Ex. 9. Hanesbrands' counsel responded the following day, on September 13, 2012, stating that they would need to confer with Hanesbrands concerning the new requests. *See* Ex. 10. Plaintiff proceeded to file his motion to compel later that day without waiting for Hanesbrands' response.

19. The following week, as previously agreed, Hanesbrands served a supplemental production of documents, totaling over 8,800 pages (approximately 3,300 documents). *See* Ex. 3. Likewise, as Hanesbrands had agreed to do prior to this motion, Hanesbrands served Plaintiff with its revised and amended responses to Plaintiff's interrogatories on October 5, 2012. A true and correct copy of Hanesbrands' Revised and Amended Responses and Objections to Plaintiff's First Set of Interrogatories is attached as **Exhibit 11**.

20. On October 1, 2012, Plaintiff's counsel informed Hanesbrands that Plaintiff could not attend the court-ordered mediation scheduled for October 16, 2012, due to a team practice which had been scheduled for that day. Plaintiff's counsel asked Hanesbrands if it would agree to proceeding without Plaintiff or to adjourning the mediation date.

21. On October 3, 2012, Hanesbrands responded to Plaintiff's counsel that Hanesbrands strongly believed that Plaintiff's attendance was necessary, but that if Plaintiff could not attend, Hanesbrands would agree to an adjournment of the mediation. In an attempt to narrow the issues to be resolved in Plaintiff's Motion to Compel, Hanesbrands also informed Plaintiff that it was amenable to a reasonable extension of discovery, and provided Plaintiff with a counter-proposal to extend the deadline for fact discovery until January 25th, 2013, and to extend the deadline for expert discovery until

6

March 15, 2013. A true and correct copy of Hanesbrands' Response and Counter Proposal is attached as **Exhibit 14**.

22. On October 5th, 2012, counsel for Plaintiff emailed Hanesbrands' counsel regarding Hanesbrands' privilege log. In response, Hanesbrands again pointed out that Plaintiff had not yet provided Hanesbrands with a privilege log, and suggested the parties agree to a simultaneous exchange of privilege logs on a mutually agreeable date. A true and correct copy of Plaintiff's request, and Hanesbrands' response is attached hereto as **Exhibit 13**.

23. Also on October 5, 2012, Plaintiff proposed that the mediation be re-scheduled for November 27th. A true and correct copy of Plaintiff's October 5th correspondence is attached hereto as **Exhibit 15**.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct, and was executed in New York, New York, on this 9th day of October 2012.

Victoria L. Loughery

8